STATE OF CONNECTICUT *v.* FRANK C. MAZZADRA

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued November 4—decided December 14, 1954

*Daniel E. Brennan, Jr.,* and *James J. A. Daly,* with whom, on the brief, was *Thomas F. Seymour,* for the appellant (defendant).

*James J. O'Connell,* prosecuting attorney, for the appellee (state).

INGLIS, C. J.  In this case, as well as in *State* v. *Antoci, State* v. *Suich* and *State* v. *Galich,* Nos. 9134, 9135 and 9136, Court of Common Pleas, Fairfield County, the defendant was charged with an attempt to wilfully injure a gas pipe, or an appurtenance thereto, of the Bridgeport Gas Light Company. Each defendant elected trial by the court.  All of them were found guilty and took appeals.  Pursuant to Practice Book, § 424, all the parties stipulated that the appeals should be combined and that the judgment of this court in the present case would be conclusive upon the parties in the other three cases.  The only assignment of error is that the court erred in concluding upon the evidence that the defendant was guilty of the crime charged beyond a reasonable doubt.

Upon the evidence, the court might reasonably have found the following subordinate facts.  In the

town of Fairfield, Stratfield Road runs north and south. It is intersected by Toilsome Hill Road. About 315 feet north of the intersection, Stratfield Road crosses a small stream by means of a bridge. Two steel gas pipes, property of the Bridgeport Gas Light Company and each inclosed in a steel casing, extend across the stream under the floor of the bridge. The casings are 16 inches and 12.5 inches in diameter, respectively. They are exposed and readily accessible. Projecting from the underside of one is a pipe plug which can be removed to permit the injection of steam.

At about 2:15 a.m. on January 19, 1954, two police officers were driving south on Stratfield Road. They saw three men, Mazzadra, Antoci and Suich, walking in a northwesterly direction and just turning from Toilsome Hill Road to go north on Stratfield Road. The officers turned into Toilsome Hill Road, stopped their car and called to the men, asking them what they were doing. One of them responded that they were "just walking." As the officers alighted from their car, Suich dropped a large pipe cutter, designed to cut steel pipe up to six inches in diameter, and ran. He escaped, but he was arrested two days later at his home. Mazzadra also ran but was caught by one of the officers in a field to the west of Stratfield Road. Antoci stood still and was easily apprehended. The officers then observed an automobile parked on Toilsome Hill Road about 150 feet east of the corner. In it they found the fourth defendant, Galich.

All four of the men were employees of the Bridge-port Gas Light Company and were on strike. Some of them made statements to the effect that they had completed their tour of duty on the picket line and had gone for a ride to kill time. The corner at which the men were found was about 3.5 miles from the

union headquarters and many miles from their homes. Galich said that he had parked his car because he had been having trouble with the gearshift lever. One of the officers, however, drove the car without difficulty.

At the opening of the trial, the prosecuting attorney, in response to the defendants' demand for a more specific statement, stated for the record that the claim of the state was that the four men were on their way to injure in some fashion the pipes of the Bridgeport Gas Light Company located under the bridge and that the overt act claimed was "the fact that the four men in question proceeded to the corner of Toilsome Hill Road and Stratfield Road; that they parked their automobile on Toilsome Hill Road, in which one of them remained, and the fact that the three others, with a pipe cutter in their possession, were walking from the automobile . . . towards the bridge . . . with the intent to injure or damage the pipes located under this bridge."

Section 8461 of the General Statutes makes it a crime to do any wilful injury to any gas pipe of any incorporated gas company or anything appertaining thereto. Section 8877 provides: "Unless otherwise expressly provided, any person who shall attempt to commit any crime or misdemeanor prohibited by statute shall be subject to the same penalty as provided by statute for the commission of such crime or misdemeanor." There are two essential elements of an attempt under this statute. They are, first, that the defendant had a specific intent to commit the crime as charged, and, second, that he did some overt act adapted and intended to effectuate that intent. *State* v. *Wells*, 31 Conn. 210, 212. The contention of the defendant on this appeal is that the trial court was not warranted in finding either a specific intent

to commit the crime as charged or an overt act directed toward its commission.

"[I]ntention is a mental process, and of necessity it must be proved by the statement or acts of the person whose act is being scrutinized." *McDermott* v. *McDermott,* 97 Conn. 31, 34, 115 A. 638. In the present case, the defendant and his associates had stated that their intention was merely to kill time and to take a walk. The trial court was, of course, not bound to accept this statement as true. It was bound to weigh the statement against the conduct of the defendant and infer from all the circumstances what his intention really was. *Lentine* v. *McAvoy,* 105 Conn. 528, 532, 136 A. 76. As tending to indicate that the defendant had the specific intention to commit the crime as charged, there was in evidence the fact that he was engaged in a labor dispute with the Bridgeport Gas Light Company and therefore had a motive for injuring the company's property. There was also the fact that he and his companions were at a place far removed from their homes at an early hour in the morning. They were in close proximity to gas mains which were exposed and vulnerable to vandalism. They had in their possession a tool adapted to the cutting of gas pipes. It is true that the size of the casings in which the gas pipes were inclosed was such that the tool could not have been used to cut the casings. The court, however, might well have believed that the tool was adequate to do damage in some way other than by actual cutting or that the men did not know that the gas pipes were inclosed in such large casings. The explanations given by the group of their presence were incredible and in one particular at least demonstrably false. On all of this evidence, we cannot say that the court was not warranted in

concluding beyond a reasonable doubt that the defendant's intention was to do injury to the gas mains of the Bridgeport Gas Light Company as they extended under the bridge.

The sole remaining question is whether the court could reasonably have found that the defendant did any act or acts of the nature requisite to complete the crime of attempt. "[T]he attempt is complete and punishable, when an act is done with intent to commit the crime, which is adapted to the perpetration of it, whether the purpose fails by reason of interruption . . . or for other extrinsic cause." *State* v. *Wilson,* 30 Conn. 500, 506; *State* v. *Enanno,* 96 Conn. 420, 427, 114 A. 386. The act or acts must be something more than mere preparation for committing the intended crime. 1 Wharton, Criminal Law (12th Ed.) p. 292. They must have gone so far toward the perpetration of the crime that in all probability the intended crime would have been completed except for extraneous intervention. *People* v. *Rizzo,* 246 N.Y. 334, 337, 158 N.E. 888; Wharton, op. cit., § 220. The acts done must be at least the start of a line of conduct which will lead naturally to the commission of a crime which appears to the actor at least to be possible of commission by the means adopted. Id., § 221. It is not, however, essential that the actor would have actually succeeded if he had followed the course of conduct upon which he had embarked. Id., § 224.

Although the law as just stated is well established, it is sometimes difficult to apply it to the facts of a specific case, since each case must stand on its own feet. See notes, 55 A.L.R. 714, 98 A.L.R. 918. In the present case, the defendant and his three companions had driven several miles from union headquarters in order to arrive at Toilsome Hill Road.

He and two others had alighted from the car and, armed with the pipe cutter, had walked a considerable distance toward the place where they intended to do injury to the gas mains. The mains were near at hand. On these facts, it was logical to conclude that they had progressed so far in the perpetration of the intended crime that they would have completed it if they had not been interrupted by the arrival of the police officers. The crime was one which it was apparently possible for them to commit. The mains were exposed and vulnerable. True, the tool which the defendants were carrying was not suitable for cutting the casings. It was, however, adequate to do some injury to the casings. It might well have been used to cut or knock off the pipe plug or injure the casings in some other way. In short, therefore, the trial court was warranted in concluding that the defendant and his companions had so far progressed in the commission of their intended crime that the defendant was guilty of the attempt charged.

There is no error.

In this opinion BALDWIN, WYNNE and DALY, Js., concurred.

O'SULLIVAN, J. (dissenting). The evidence, it seems to me, fails to establish beyond a reasonable doubt any act capable of being legally classified as an overt act. Walking upon a public highway several hundred feet from the location of the gas mains was, at most, an act of preparation. The law requires more than that. *People* v. *Pippin*, 316 Mich. 191, 195, 25 N.W.2d 164; *People* v. *Rizzo*, 246 N.Y. 334, 336, 158 N.E. 888; *Commonwealth* v. *Ellis*, 349 Pa. 402, 404, 37 A.2d 504; *State* v. *Hurley*, 79 Vt. 28, 30, 64 A. 78. Accordingly, I must register dissent.