STATE OF CONNECTICUT *v.* PAUL E. FERRIGNO

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 2-13907

Argued September 28—decided December 2, 1964

*Edward G. Burstein,* of Bridgeport, for the appellant (defendant).

*George J. Ferrio,* assistant prosecuting attorney, for the appellee (state).

KOSICKI, J. The defendant was charged generally with larceny in violation of § 53-63 of the General Statutes. No bill of particulars was requested or filed, and the court found him guilty of shoplifting goods exceeding $15 but not exceeding $50 in value, which crime is specifically defined in paragraph (b) of the statute.[1] The single ground of appeal is whether upon all the evidence the defendant was guilty of the crime charged beyond a reasonable doubt. No finding was requested or made and none

---

[1] "Sec. 53-63. LARCENY. SHOPLIFTING. . . . (b) Any person who wilfully takes possession of any goods, wares or merchandise offered or exposed for sale by any store or other mercantile establishment with the intention of converting the same to his own use, without paying the purchase price thereof, if the value of the goods, wares or merchandise exceeds two thousand dollars, shall be imprisoned not more than twenty years or fined not more than one thousand dollars or both; if it exceeds fifty dollars but does not exceed two thousand dollars, he shall be imprisoned not more than five years or fined not more than five hundred dollars or both; if it does not exceed fifty dollars but exceeds fifteen dollars, he shall be fined not more than two hundred dollars or imprisoned not more than six months or both; if it does not exceed fifteen dollars, he shall, for the first offense, be fined not more than one hundred dollars or imprisoned not more than sixty days or both. For a second or subsequent offense involving goods, wares or merchandise of a value not in excess of fifty dollars, he shall be fined not less than fifty dollars nor more than two hundred dollars or imprisoned not less than thirty days nor more than one year or both. (c) Any person wilfully concealing unpurchased goods or merchandise of any store or other mercantile establishment, either on the premises or outside the premises of such store, shall be prima facie presumed to have so concealed such article with the intention of converting the same to his own use without paying the purchase price thereof within the meaning of subsection (b) of this section. The presence of such unpurchased goods or merchandise concealed upon the person or among the belongings of such person shall be prima facie evidence of wilful concealment and, if such person conceals, or causes to be concealed, such unpurchased goods or merchandise upon the person or among the belongings of another, the presence of the same shall also be prima facie evidence of wilful concealment on the part of the person so concealing such goods."

was necessary. The defendant has filed all of the evidence as required by our rules. Practice Book § 995. Upon our examination of the entire evidence, we determine whether the court erred in holding that guilt was established by the requisite degree of proof. *State* v. *Pundy,* 147 Conn. 7, 8.

On January 18, 1964, at about 3 p.m., the defendant and a companion, Emanuel Henriques, were present in a department store of E. J. Korvette, Inc., in Trumbull. Their presence at that time and for approximately three hours thereafter was observed and their actions were under surveillance by two of the department store's security force whose duty was to apprehend shoplifters. When first seen, the defendant and his companion were in the men's clothing department. At the time of their entering the store, each was wearing a sweater. For about two hours they tried on cashmere topcoats which were then on sale at a uniform price of $44. They then left that department, each carrying a coat on his arm, and went to the ladies' department, located approximately 100 feet from the men's department. There, the defendant helped Henriques remove a price tag from the coat in the latter's possession, which coat was then hung among other garments in the ladies' department. The defendant and his companion then walked through other departments and came back to the ladies' department and removed the coat from the rack. They then strolled through the infants' department, heading toward the drug department exit. At the outside door, Henriques put on the coat he was carrying and they both left the store and entered the mall, which is an outside area common to other stores. At no time did the defendant or his companion ask for the services of any of the store employees in the selection of the two cashmere coats; and before they left the store they did not stop at any of the various

cashier counters for the purpose of payment or arrangement of credit.

Upon their departure, immediate pursuit of Henriques was launched by members of the security force; and he, after a shout from the defendant, discarded the coat and attempted to elude his pursuers. He was finally apprehended and brought back to the store for police action. Meanwhile, the defendant, still carrying the cashmere coat on his arm, reentered the store and returned to the men's department. He was then accosted by a store employee who asked him for the coat, which he gave up at once. The coat had been taken from the racks in the store and when handed to the store employee had no price tags on it. It is the usual business practice of the store to place price tags on all items of merchandise of this kind before they are placed on the racks and exposed for sale.

Both the state and the defense have directed the main force of their arguments toward the question whether on the above facts the defendant could be found guilty of shoplifting because the coat, which admittedly was taken from a rack in the store, had not been concealed by him either on his person or among his belongings. The real issue, however, is whether, at the time the defendant took possession of the coat he had the intention of converting it to his own use without paying the purchase price thereof. Paragraph (c) of § 53-63 provides that concealment of merchandise, as defined in that paragraph, shall be prima facie evidence of intention to shoplift the merchandise, as proscribed by paragraph (b) of that section. The court in making its guilty finding said as follows: "I am satisfied beyond any reasonable doubt that he wilfully took possession of this coat offered and exposed for sale by E. J. Korvette's, with the intention of converting the same to his own use and without paying the

purchase price thereof. That I am satisfied of beyond a reasonable doubt and I make a finding of guilty under section (b) of 53-63." This states clearly and unequivocally that the court found the necessary ingredient of intent as a fact and did not rely upon the presumptions created by the statute.

Intention is a mental process and may be proved by the acts and conduct of the person charged with harboring it and by fair inferences that may be drawn from such acts or conduct. *State* v. *Mazzadra,* 141 Conn. 731, 735. "A question of intent is a question of fact [to be determined by the trier and] . . . is not reviewable unless the conclusion drawn by the trier is one which cannot reasonably be reached." *International Brotherhood* v. *Commission on Civil Rights,* 140 Conn. 537, 543. We cannot disturb the conclusion reached by the court. Furthermore, we may point out that the defendant took the witness stand in his own behalf and, in explanation of his actions, testified that he had only $10 on his person at the time, was waiting for a friend to arrive at the store to furnish the additional funds, and did not intend to steal the coat, but in the last extremity would have applied for credit at the store. This testimony the court could well disbelieve; *State* v. *Mazzadra,* supra; thus leaving unexplained the defendant's conduct, which, only because of the unexpected intervention of the security personnel, became an aimless, time-consuming, odyssey in a vain quest for the golden fleece.

There is no error.

In this opinion PRUYN and LEVINE, Js., concurred.