[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On February 15, 1992, a cooperating witness informed a member of the Special Investigations Division of the Danbury Police Department that a white male from the environs of Bridgeport had expressed an interest in purchasing a kilogram of cocaine. That witness, under constant police surveillance, was fitted with an electronic transmitting device and proceeded to meet the prospective purchaser in the parking lot of the Ramada Inn in Danbury. He identified himself to the cooperating witness as David and his last name was subsequently determined to be Salerno, the defendant in this case. Salerno stated that he wanted to purchase a kilogram of cocaine for the price of fifteen thousand ($15,000.00) dollars. However, at that time, he indicated that he could only pay eight thousand ($8,000.00) dollars "up front." The conversation continued and Salerno further explained his involvement in drug trafficking and that he and his partners would be good customers in the future.
On February 17, 1992, the same cooperating witness, CT Page 2811 again under constant surveillance by the Danbury Police Department and again wearing an electronic transmitting device, returned to the Ramada Inn where he met with the defendant. Salerno asserted that he had the money and wanted to see the "package" which was handed to him. As he was cutting it open, that is the package that was represented as being cocaine, but which in fact was flour, the surveillance personnel arrested him and another man whose identity and prosecution are here irrelevant.[1]
In due course, the case progressed through the pretrial process and was tried before a jury which rendered a verdict on the lesser included offense of Attempted Possession of a Narcotic Substance with Intent to Sell in violation of sections 53a-49 and 21a-277(a) of the General Statutes on November 24, 1992. However, immediately before the closing arguments, the defendant filed a written motion for judgment of acquittal on the ground of legal impossibility. The motion was accompanied by a brief in support thereof. With the defendant's acquiescence, the court reserved decision and provided a certain time limitation for the State to file a reply brief which was timely filed.
It is the defendant's contention that since the subject matter of the purchase was flour vice cocaine, that he could not successfully be charged with, much less prosecuted for, the crime of Attempt to Possess a Narcotic Substance with Intent to Sell under the penal statutes. At the risk of oversimplification, his hypothesis appears to be summarized in the first paragraph in his memorandum of law.
 Congress intentionally abrogated the common law defense of legal impossibility in `possession of controlled substance' cases when it enacted 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846, the federal statute which expressly makes an `attempt' to possesses a controlled substance a crime. As a result, federal courts have consistently ruled that legal impossibility is not a defense in `reverse sting' operations where, as in the present case, police substitute a bogus substance for narcotics, sell the substance to an unwary buyer as a narcotic substance, and then effectuate an arrest. See e.g. United States v. Pennell, 737 F.2d 521 (6th Cir. 1984); United States v. Everett, 700 F.2d 900, 903-08 (3rd Cir. 1983).
CT Page 2812
He continues by asserting that Connecticut, quite unlike Congress, has enacted no statute similar to the cited federal statute. Reduced to its simplest terms, if a specific statute combining the inchoate and predicate offenses has not been enacted, then combining both inchoate and predicate offenses and pleading them seriatim, e.g., attempt to possess a narcotic substance in violation of sections 53a-49a and 21a-277a of the General Statutes, is inadequate and fatally flawed. His conclusion, based upon these hypotheses, may be expressed as something to the effect that therefore the legal impossibility defense is alive, well and existent in Connecticut. That conclusion is legally as well as logically inaccurate.
The State would avail itself of and capitalize upon that flaw by asserting and relying upon our Attempt Statute which it asserts eliminates the common law defense of impossibility in these cases, if it ever existed at all. See section 53a-49 of the General Statutes. Subsection (a) of the cited statute recites that "[a] person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or admits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission to the crime."
At common law, a distinction is made between factual and impossibility and legal impossibility. Usually, with respect to an attempt prosecution, the latter is a defense while the former is not. 4 Charles E. Torcia, Wharton's Criminal Law, Sec. 15 (14th Ed. 1981). In People v. Jaffe, 185 N.Y. 497,78 N.E. 169, the appellate court reversed the conviction arising out of an attempt to receive stolen property holding that the defendant could not be convicted of the substantive crime of receiving stolen property once the property the defendant attempted to purchase lost its stolen character. The purchase, therefore, had it been completely effectuated could not constitute the crime of knowingly receiving stolen property, since there was indeed no knowledge by the defendant of a nonexistent fact, even though there might be a CT Page 2813 belief on his part that the fact existed. JAFFE was the apparent seminal case on this subject for many years. We in our courts, not unlike JAFFE, have held that in order to prove illegal possession of a narcotic substance it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion control over it. State v. Alfonso, 195 Conn. 624, 633. In the instant proceeding, Salerno, under the rule of JAFFE, could not be convicted of the substantive crime of Possession of a Narcotic Substance with the Intent to Sell as the result of his lack of knowledge of the character of the substance he attempted to purchase (i.e. flour). This court has no quarrel with that proposition.
With the passage of time, cogent reasoning has generated substantial criticism of JAFFE, and the rationale of this criticism has led to the elimination of the impossibility defense in many jurisdictions. It recognizes that the JAFFE approach is unsound in that it seeks to evaluate a mental attitude "intent" or "purpose," not by looking to the actor's mental frame of reference, but to a situation wholly at variance with the actor's beliefs. In so doing, the [JAFFE] courts exonerate defendants in situations where attempt liability most certainly should be imposed. In all these cases, the actor's criminal purpose has been clearly demonstrated; he went as far as he could in implementing that purpose; and, as a result, his "dangerousness" is plainly manifested. See Model Penal Code, Sec. 5.01, comment at 308-09.
It is also interesting and perhaps amusing to note that California, despite its oft labeled liberal approach to criminal law, has repudiated the impossibility defense in a case where a defendant was convicted of attempting to possess an illegal narcotic substance which in fact was talcum powder. In so doing, the court recited that "[i]f there is an apparent ability to commit the crime in the way attempted, the attempt is indictable, although unknown to the person making the attempt, the crime cannot be committed, because the means employed are in fact unsuitable, or because of extrinsic facts, such as the nonexistence of an essential object, or an obstruction by the intended victim or by a third person." (Emphasis supplied.) People v. Siu, 126 Cal.App.2d 41,271 P.2d 575, 576-77; 22 C.J.S., Criminal Law, Sec. 77, p. 142. CT Page 2814
Most writers expressing the so-called modern trend which is consistent with SIU describe that trend as eliminating the impossibility defense and by doing so primarily by statute. "[T]he impossibility issue arose in the (JAFFE case) because the receiving statute required a person know the property to have been stolen, a problem which the legislature could very easily have avoided by instead providing that belief that the property was stolen as sufficient. . . . So the argument goes the proper solution to JAFFE is to `attend to the statute defining the substantive crime.'" Torcia Wharton's Criminal Capital Law, Sec. 747; 2 Wayne R. LaFave Austin W. Scott, Substantive Criminal Law, Sec. 6.3(a)(3).
New York has chosen to modernize its thinking and overcome the frequently referred to error in JAFFE by enacting the following statute: "If the conduct in which a person engages otherwise constitutes an attempt to commit a crime, pursuant to section 110.00, it is no defense to a prosecution for such attempt that the crime charged (to have been attempted) was, under the attendant circumstances factually or legally impossible commission, if such crime could have been committed had the attendant circumstances been as such person believed them to be." (Emphasis supplied.) New York Penal Laws, Sec. 110.10. Its court therefore, then went on to hold that "[l]egal impossibility as to the commission of the underlying crime is no defense to a charge of attempting to commit the crime, provided `such crime could have been committed had the attendant circumstances been as . . . [the defendant] believed them to be.'" People v. Leichtweis, 399 N.Y.S.2d 439, 441. Penal Law, Sec. 110.10. Having set forth the history of the defense under examination herein which clearly rose and fell upon JAFFE, it becomes appropriate to examine our own approach to the issue.
Our courts have recognized and approved the principle of inchoate offenses when pleaded in conjunction with predicate crimes for something in excess of one hundred twenty-five (125) years and have declared that a person is guilty of an attempt to commit a crime if that person performs an act with the intent to commit the crime, and that act is adapted to the perpetration of the crime, regardless of whether the person's purpose fails "by reason of interruption . . . or for other extrinsic cause." State v. Wilson, 30 Conn. 500, CT Page 2815 506.
The setting for WILSON was the Hartford railroad station on a crowded day. One of the defendants reached into an innocent lady's pocket while the other gentleman stood by. No proof of the identity of the woman or proof of whether or not there was money or anything of value in her pocket was offered. The court charged the jury that if the defendant's intent "when he thrust his hand into the woman's pocket was to steal money or other property if any should be found in her personal possession" then in that event the jury could find the accused guilty of the attempted crime. Upon the defendant's conviction, he moved for a new trial. Our Supreme Court reasoned that while there ". . . undoubtedly must be present ability to perpetrate the crime," [i.e., the accused must be of legal age, must have use and control of his mental faculties, and must be in a situation to effect the purpose] it is not true that the thing intended to be taken must be where the attempting thief supposed it to be, or that there must be in fact property where he supposes it to be. The court held it sufficient if the thief supposed there was property in the pocket, trunk or other receptacle and attempted by some act adapted to that purpose to obtain it feloniously.
It is significant to note that Connecticut had no attempt statute at the time that this case was decided. However, it discussed the fact that New York and Pennsylvania had statutes which affirmed the common law. It recognized and concluded that the only safe rule to be applied is that the attempt is complete and punishable when the act is done with the intent to commit the crime, which is adapted to the perpetration of it, where the purpose fails by reason of interruption or because there was nothing in the pocket or for other extrinsic circumstances. State v. Wilson, supra.
The State in its brief in opposition to the motion to acquit informs the court that the defendant in the instant case is obviously guilty of an attempt to commit a crime, that is, possession of narcotics with intent to sell. It goes on to recite that he performed not only the act but a series of acts with the intent to commit that crime. The acts of meeting with and discussing money with a person he believed to be a drug dealer were adapted to the perpetration of the crime. The package he arranged to purchase contained CT Page 2816 flour and not the cocaine he sought and believed he was getting. The fact that the flour was substituted is the only reason that the attempt failed. The state continues its argument by asserting that it is the defendant's intent and actions and not some extrinsic cause which must be the focus of the court's scrutiny and that since the defendant's attempt was complete, the evidence reasonably permits a finding of guilty beyond a reasonable doubt.
Although the acts done must be at least the start of a line of conduct which will lead naturally to the commission of the crime which appears to the actor at least to be possible of commission by the means adopted, it is not essential that the actor would have actually succeeded if he had followed the course of conduct upon which he had embarked. State v. Mazzadra, 141 Conn. 731, 736. MAZZADRA involved four employees of the Bridgeport Gas Light Company on strike who were charged with attempt to wilfully damage a gas pipe. The police had found the men walking with a large pipe cutter in the vicinity of gas pipes but far from both union headquarters and their homes. They elected a trial by the court and were found guilty. The argument offered by the defense was that the court was not warranted in finding either the specific attempt to commit the crime charged or any overt act directed toward the commission of the crime.
On review, the court seizing upon the attempt statute, which was then section 8877 of the General Statutes, set forth a two-prong test to satisfy the elements of that statute. They were that the defendant must have had the specific intent to commit the crime as charged and that he must have done some overt act which was adapted and intended to effectuate that intent. Once the defendant's intent was shown, the "sole remaining question" was whether the court could reasonably have found that the defendants performed an act or acts of a "nature requisite to complete the crime of attempt." State v. Mazzadra, supra, 735-36. It also pointed out that the defendants' acts "must have gone so far toward the perpetration of the crime that "IN ALL PROBABILITY THE INTENDED CRIME WOULD HAVE BEEN COMPLETED EXCEPT FOR EXTRANEOUS INTERVENTION." (Emphasis supplied.) State v. Mazzadra, supra, which drew upon People v. Rizzo, 246 N.Y. 334,337.
It neither tortures law nor logic in the present case to CT Page 2817 conclude that the intended crime would have been completed except for the substitution of the flour for cocaine. That substitution by the Danbury Police, however, is purely extraneous intervention and does not overcome or even affect the defendant's beliefs or actions. His motion ignores the law and appear to be a thinly veiled effort to shift the court's attention away from the defendant. The focus, however, must be on the defendant's intent on his actions and on his beliefs, not on whether or not he would have actually succeeded in his efforts.
The shadow of the defense of impossibility found by this court to be fatally flawed herein, nevertheless may haunt the prosecution in cases where the charging documents are inartfully drawn or otherwise inadequate. However, in cases where section 53a-49 is utilized, it is apparent that only the defendant's mental state and his perception of the circumstances are to be considered in the determination of guilt with respect to criminal attempt.
The statutory language is clear. There was substantial evidence and beliefs, presented not only by the State but also by the defendant himself. While he may have failed in his purpose, his conduct is criminally culpable. It was carried far enough to be treated as a crime in and of itself. State v. Green, 194 Conn. 258, 272. The GREEN court significantly enough focused on the defendant's intent. It examined his mental status as proven through his statements and actions. It then addressed the problem of whether or not the jury could reasonably have found that the defendant's conduct was of such a nature as to constitute the inchoate crime of attempt. That same analysis is appropriate in this case.
The defendant in his memorandum in support of his motion acknowledges Connecticut's common law statutes on the defense of impossibility as it relates to the crime of attempt. He asserts that he was an unwary buyer, that the police substituted a false substance for the cocaine he intended to purchase. He admits through his testimony at trial and through his choice of words in his memorandum that he intended to purchase a narcotic substance and intentionally engaged in conduct that would have constituted the crime of possession of a narcotic with intent to sell if the attendant circumstances were as he believed them to be. It is only CT Page 2818 because he was unwary, because he did not know that he was really buying flour, that he now claims that he cannot have attempted to possess cocaine. This argument is strikingly similar to the argument rejected in GREEN. As in GREEN, the logic here is hardly logic at all.
Our Appellate Court cases recently continued to hone in on the significance of the defendant's belief. See State v. Gilchrist, 25 Conn. App. 104; State v. Rochette, 25 Conn. App. 298,305. In the latter case, the court citing GREEN and MAZZADRA reiterated that a conviction for an attempt will be upheld when it appears to a defendant that the crime is at least possible to commit by the means he has adopted.
The defendant cites no authority for the proposition that the doctrine of impossibility should apply to the instant case. He does by analogy and apparently argues that the state must prove all the elements of the predicate crime before a person can be convicted of an attempt to commit that crime. He uses assault as an example of this theory that the state bears the burden of proving that all of the elements of the substantive charge be completed in order to prove the lesser included inchoate offenses. If so, would not the State have met its burden on that substantive charge? His memorandum seems to disregard or ignore GREEN, supra, and its rationale. While expressed in an attempted sexual assault case, it nevertheless was an assault. Once again, his hypothesis ignores the fact that defense of legal impossibility never existed under our common law. See State v. Wilson, supra.
The defendant would bootstrap his arguments by citing United States v. Everett, 700 F.2d 900 (3rd Cir. 1983). His reliance on EVERETT is paradoxical to say the least as the court's comment therein that the "viability at common law of the doctrine of impossibility was questionable at best." It explained its reluctance to accept the defense by continuing ". . . [t]hat if impossibility were a defense in the circumstances involved here, the harm loosed upon the public is not merely that would be drug dealers must be freed to try again. Allowing the defense here would also gut law enforcement efforts to infiltrate drug supply chains. The government goes under cover not only as a purchaser, as in the instant case, but as a seller or as a middleman. The Drug Enforcement Agency has apparently adopted the laudable CT Page 2819 policy of not supplying real drugs in such investigative efforts. [Citations omitted.] If such a impossibility is a defense, the government will be forced to furnish real drugs or ban any hope of obtaining attempted convictions." United States v. Everett, supra, 907, n. 16. It also mentions that the federal statute which abolished the defense arose out of frustration the courts experienced in these cases. The EVERETT court noted impossibility as being held to be no defense on similar facts at common law. United States v. Everett, supra, n. 8.
The state concludes its brief by arguing that since Connecticut has never recognized the defense of impossibility, it is not one of those states which has been confused over the subtleties of the doctrine, nor is it one which has had to follow the trend toward restricting or eliminating the doctrine. It continues that to adopt the defendant's argument, however, and apply the doctrine of impossibility to attempted possession of narcotics in these cases at this late date, would be to plunge Connecticut into the morass of confusion from which other states and the federal system have only recently emerged. This court finds such argument persuasive.
For all the foregoing reasons, this court disagrees with the defendant's premise that the defense of impossibility exists and is alive and well in these cases in Connecticut.
The motion for acquittal is denied.
Moraghan, J.