STATE OF CONNECTICUT *v.* JOANNE ROCHETTE
(9106)

O'CONNELL, LAVERY and LANDAU, Js.

Argued December 7, 1990—decision released July 23, 1991

*Jeremiah Donovan,* special public defender, for the appellant (defendant).

*Lawrence J. Tytla,* assistant state's attorney, with whom, on the brief, was *C. Robert Satti, Sr.,* state's attorney for the appellee (state).

LANDAU, J. The defendant appeals from her conviction, after a jury trial, of larceny in the fifth degree in violation of General Statutes § 53a-125a, and attempted larceny in the third degree in violation of

General Statutes §§ 53a-49 and 53a-124 (a) (2). On appeal, the defendant claims (1) that the trial court improperly admitted a written telephone message under the business record exception to the hearsay rule, (2) that there was insufficient evidence to support her conviction of larceny in the fifth degree, and (3) that there was insufficient evidence to support her conviction of attempted larceny in the third degree. We affirm the trial court's judgment in part and reverse it in part.

The jury could reasonably have found the following facts. In the early morning hours of October 2, 1988, the defendant telephoned radio station WQGN-WSUB, spoke to the night disc jockey, Julie Johnson, and inquired if someone would be available later that night so that she could call back. After Johnson told the defendant that she would be there all night, the defendant called back approximately one-half hour later. During this second call, the defendant told Johnson that her daughter recently had been diagnosed as having a brain tumor and was dying and that she was seeking tickets to a sold out Michael Jackson concert for her daughter. The defendant was highly emotional during the conversation and cried frequently. Johnson told the defendant that she would speak to her superiors to see what could be done about the tickets. That morning, Johnson discussed the telephone call with her superiors.

In an attempt to verify the situation, the radio station's promotions director telephoned the defendant and received the name of a physician. After two unsuccessful attempts at finding the physician's telephone number using various spellings, he again telephoned the defendant's house. This time he was given the proper spelling of the physician's name and his telephone number. The promotions director called the physician's office and was told that the child was a patient but because of physician-patient confidentiality, no details could be disclosed. In fact, this physician had

never treated the child but the defendant was employed in that office and one of her duties was to answer the telephone. The promotions director also contacted the John Dempsey Hospital and was told that the child was scheduled for treatment. There is no dispute that the child was scheduled for treatment. The child, however, did not have a brain tumor but was susceptible to petit mal seizures as a result of a head injury and was scheduled for treatment for pain management. After receiving verification that the child was under medical care, the promotions director acquired four tickets to the concert at the Meadowlands in New Jersey. He also arranged for a limousine to take the child to the concert. He and the defendant then arranged the best means of giving the tickets to the child because the defendant told the radio station personnel that her daughter did not know the severity of her medical condition.

The promotions director, Johnson, the defendant and her daughter attended the concert. During the ride to the concert, the defendant was distraught and teary eyed especially when her daughter discussed the future. She also gave her daughter medicine, and her daughter would occasionally seem disoriented, a condition corresponding to petit mal seizures.

After the concert, the defendant remained in contact with the personnel at the radio station and especially with Johnson. She would call Johnson three to six times a week and discuss her daughter's physical health. The defendant, when speaking with Johnson, often referred to chemotherapy and other types of treatment. The defendant also discussed her financial difficulties and her unsuccessful attempts at acquiring a mortgage or loan. She then revealed that there was a drug not approved by the Federal Drug Administration that might shrink the size of her daughter's tumor but that the treatments were very expensive.

Early in December, 1988, the defendant contacted the general manager of the radio station and asked if she could meet with him. During this meeting, the defendant discussed her financial difficulties and the unapproved treatment. She told him that she would need $5000 within two weeks for the first of three drug treatments. The defendant then requested the general manager's help in obtaining the money. As a result, the general manager began organizing a station sponsored fund raiser. The defendant stressed, however, that she did not want her name or her daughter's name publicly disclosed. While making arrangements for this event, the general manager discovered that the defendant had a past history of fraudulent schemes and he then began making further inquiries. As a result of these inquiries, the radio station filed a complaint against the defendant.

## I

On cross-examination, the defendant denied telephoning the radio station on October 3, 1988, and leaving a message for Johnson referring to chemotherapy. The state, during rebuttal, had Johnson introduce a written telephone message dated October 3 at 8:30 a.m. The message is to Johnson from the defendant and states: "Will not be able to call you until after 1:00 p.m. Dr. Armine has scheduled [her daughter] for chemotherapy this morning. If you were not successful - it's o.k., she will understand. Wants to know if you could find out for the children the local telephone # for the children's 'make a wish' foundation. Will call you at 1:30 p.m. today?" The message includes the defendant's unlisted telephone number and is signed "Nia."

The defendant claims that the trial court improperly admitted this message under the business record exception to the hearsay rule, General Statutes § 52-180. Because this message was not admitted for the truth

of its contents but for purposes of impeaching the defendant's credibility, it was not hearsay and, therefore, we are not required to determine if the message falls under an exception to the hearsay rule.

Hearsay is an out-of-court statement offered to establish the truth of the matters contained therein. *State* v. *Sharpe,* 195 Conn. 651, 661, 491 A.2d 345 (1985); *State* v. *Packard,* 184 Conn. 258, 274, 439 A.2d 983 (1981). The telephone message was not offered to establish the truth of the child's medical condition but rather, was offered to contradict the defendant's statement that she had not called Johnson on October 3 and referred to chemotherapy. Testimony that refutes evidence or impeaches a witness' credibility is proper during rebuttal, and the message, therefore, was properly admissible for this purpose. *State* v. *Peary,* 176 Conn. 170, 174–75, 405 A.2d 626 (1978); *Vazzano* v. *Slater,* 6 Conn. App. 1, 5, 502 A.2d 440 (1986).

## II

The defendant next challenges whether there was sufficient evidence to establish that her acceptance of the limousine ride to the concert in New Jersey constitutes larceny in the fifth degree.

In reviewing a sufficiency of the evidence claim, this court undertakes a two part inquiry. " ' "We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt . . . ." ' " *State* v. *Plourde,* 208 Conn. 455, 458, 545 A.2d 1071 (1988), cert. denied, 488 U.S. 1034, 109 S. Ct. 847, 102 L. Ed. 2d 979 (1989).

The defendant was charged with larceny in the fifth degree pursuant to General Statutes § 53a-125a.[1] Larceny occurs when, "with intent to deprive another of property or to appropriate the same to himself or a third person, [a person] wrongfully takes, obtains or withholds such property from an owner." General Statutes § 53a-119; *State* v. *Marra*, 174 Conn. 338, 342, 387 A.2d 550 (1978); *State* v. *Banet*, 140 Conn. 118, 122, 98 A.2d 530 (1953). Larceny specifically includes theft of services.[2] General Statutes § 53a-119 (7). The defendant, therefore, must wrongfully have had the intent to obtain the services provided by the limousine ride to the concert.

Even construing the evidence in the light most favorable to sustaining the jury's verdict, we agree that the jury could not reasonably have concluded that the cumulative effect of evidence established the defendant's guilt beyond a reasonable doubt. The evidence presented at trial revealed that the defendant contacted the radio station to obtain tickets to the Michael Jackson concert. She made no mention of transportation to the concert. Rather, the promotions director, on his own initiative, arranged for the limousine to take them to the concert. The evidence, therefore, does not sufficiently support a finding that the defendant had the

---

[1] General Statutes § 53a-125a provides: "(a) A person is guilty of larceny in the fifth degree when he commits larceny as defined in section 53a-119 and the value of the property or service exceeds two hundred fifty dollars.

"(b) Larceny in the fifth degree is a class B misdemeanor."

[2] Theft of services occurs when "with intent to obtain the use of equipment, including a motor vehicle, without payment of the lawful charge therefor, or to avoid payment of the lawful charge for such use which has been permitted him, [a person] obtains such use or avoids such payment therefor by means of any false or fraudulent representation, fraudulent concealment, false pretense or personation, trick, artifice or device, including, but not limited to, a false representation as to his name, residence, employment, or driver's license . . . ." General Statutes § 53a-119 (7).

requisite intent to acquire the services of a limousine in addition to the concert tickets.

### III

The defendant also challenges the jury's finding that she was guilty of attempted larceny in the third degree. Specifically, she asserts that the evidence was not sufficient to establish attempted larceny and was not sufficient to establish that the value of the property at issue exceeded one thousand dollars.

"A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he . . . intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." General Statutes § 53a-49 (a). An attempt is complete and punishable, regardless of its failure due to interruption, other extrinsic causes or its likelihood of success, if " ' "an act is done with intent to commit the crime, which is adapted to the perpetration of it . . . . " ' " *State* v. *Green,* 194 Conn. 258, 276, 480 A.2d 526 (1984); *State* v. *Mazzadra,* 141 Conn. 731, 736, 109 A.2d 873 (1954). The act or acts must constitute more than mere preparation but at least must be " 'the start of a line of conduct which will lead naturally to the commission of a crime which appears to [a defendant] at least to be possible of commission by the means adopted." *State* v. *Green,* supra; *State* v. *Mazzadra,* supra. A defendant, therefore, is criminally culpable because the conduct "causes a sufficient risk of harm to be treated as a crime in and of itself." *State* v. *Green,* supra, 272.

Our initial determination must be whether the defendant had the intent to commit larceny. The requisite intent is the intent permanently to deprive the

owner of the property without color of right or excuse for the act. *State* v. *Banet,* supra; see also *State* v. *Marra,* supra. A person's intent is to be inferred from his conduct and the surrounding circumstances and is an issue for the jury to decide. *State* v. *Green,* supra, 273.

A review of the evidence in the light most favorable to sustaining the verdict reveals that there was sufficient evidence for the jury reasonably to conclude, beyond a reasonable doubt, that the defendant had the intent to commit larceny and took substantial steps in furthering the commission of this crime. See *State* v. *Plourde,* supra.

A person obtains property by false pretenses when, "by any false token, pretense or device, he obtains from another any property, with intent to defraud him or any other person." General Statutes § 53a-119 (2). To be found guilty of this crime, a person, therefore, must knowingly make a false representation with the intent to defraud, and that false representation must induce action that effectively causes the accused to receive something of value without compensation. See *State* v. *Farrah,* 161 Conn. 43, 47, 282 A.2d 879 (1971); see also *State* v. *Brown,* 198 Conn. 348, 352–53, 503 A.2d 566 (1986).

The evidence established that the defendant initiated contact with the radio station and cultivated a continuing relationship after the concert. From the course of conduct pursued by the defendant, it was reasonable for the jury to infer that the defendant intentionally misrepresented her daughter's health, thus appealing to the sympathies of the personnel at the radio station, and stressed her financial difficulties so that the radio station would respond to her appeal for help. As a result, the radio station began organizing a fund raising event, the proceeds of which would be given to the

defendant for her daughter. It was also reasonable for the jury to conclude that this course of conduct, culminating in a meeting with the general manager and the organization of a benefit, constituted a substantial step in furtherance of a plan to obtain the proceeds from the fund raiser.

The defendant maintains, however, that there was insufficient evidence to establish that the value of the property exceeded $1000. See General Statutes § 53a-124.[3] In general, the value of property or services is determined by the market value of the property at the time or place of the crime, or, "if such cannot be satisfactorily ascertained, the cost of replacement of the property . . . within a reasonable time after the crime." General Statutes § 53a-121.

The market value of property can be established by various methods such as the testimony of an owner; see, e.g., *State* v. *McCarthy,* 197 Conn. 166, 172, 496 A.2d 190 (1985); or the testimony of an individual employed in a business that deals with the property to be valued. See, e.g., *State* v. *Cochran,* 191 Conn. 180, 189, 463 A.2d 618 (1983) (sales manager at a stereo store); *State* v. *Frilando,* 182 Conn. 397, 399, 438 A.2d 413 (1980) (jeweler). It is within the province of the jury to assess the credibility and the weight of the evidence presented. *State* v. *Cochran,* supra, 190.

The value at issue involves the amount of money that could be raised at a benefit sponsored by the radio station. The general manager testified that the radio station would be able to organize a fund raising event within two weeks that could attract between 500 and 1000 people. The benefit envisioned sought to meet the

[3] General Statutes § 53a-124 provides in pertinent part: "(a) A person is guilty of larceny in the third degree when he commits larceny as defined in section 53a-119 and . . . (2) the value of the property or services exceeds one thousand dollars . . . ."

defendant's stated goal. Whether such an event would have raised $5000 is irrelevant. By stating her need for $5000, the defendant evinced an intention to obtain property valued at over $1000 and evidence was presented that the defendant's immediate goal of $5000 could be reached. The jury, therefore, could have reasonably concluded that the defendant intended to obtain property valued at over $1000.

The judgment is reversed as to the conviction of larceny in the fifth degree and the case is remanded with direction to render a judgment of not guilty of that crime; the judgment is affirmed as to the conviction of attempted larceny in the third degree.

In this opinion the other judges concurred.