## STATE OF CONNECTICUT *v.* LIDA NOSIK
## (14975)

Landau, Schaller and Spear, Js.

Argued December 2, 1996—officially released February 18, 1997

*Andrew B. Bowman*, for the appellant (defendant).

*Michael E. O'Hare*, deputy assistant state's attorney, with whom, on the brief, were *Walter Flanagan*, state's attorney, and *Kevin Black*, deputy assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant, Lida Nosik, appeals from the judgment of conviction, rendered after a trial to the court, of larceny in the second degree in violation of General Statutes § 53a-123.[1] On appeal, the defendant claims that the trial court improperly (1) found the evidence presented at trial was sufficient to convict her of larceny in the second degree, and (2) found that the charging document stated an offense under the second degree larceny statute.[2] We affirm the judgment of the trial court.

[1] General Statutes § 53a-123 provides in relevant part: "(a) A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119 and . . . (2) the value of the property or service exceeds five thousand dollars . . . ."

General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

[2] Count three of the substitute information dated January 12, 1995, alleged: "Said Deputy Assistant State's Attorney further accuses Lida Nosik of the crime of Larceny in the Second Degree and charges that at the City of Danbury, Connecticut, beginning on or about May 22, 1991, and continuing through January 21, 1994, the said Lida Nosik did, with intent to deprive another of property or to appropriate the same to herself or a third person,

The trial court could reasonably have found the following facts. The defendant was hired by the Danbury board of education in September, 1985. At that time, the defendant completed a payroll data sheet that indicated her marital status as single. On December 8, 1988, the defendant applied for a contract change with Blue Cross and Blue Shield of Connecticut, Inc., to change her marital status from single to married and listed her husband as Michael Kovac and her son Michael Dovrow Kovac, as her dependents. The defendant indicated on this form that she married Kovac on July 5, 1987.

On July 21, 1991, the Danbury board of education changed the company that provided health insurance coverage to its employees from Blue Cross and Blue Shield to CIGNA Healthcare of Connecticut, Inc. (CIGNA). The defendant completed the necessary forms, listed Kovac as her husband and the father of Michael Dovrow Kovac, and selected the family health insurance option. Under CIGNA's plan, only the lawful spouse and children of employees were eligible for benefits as dependents. Between July 1, 1991, and October 6, 1993, CIGNA paid claims in the amount of $10,692.94 to medical providers on behalf of Kovac. On October 6, 1993, the defendant's employer requested proof of her marriage to Kovac. Because the defendant failed to produce any proof of the marriage, her employer filed a complaint with the Danbury police department. In December, 1993, detective James Fisher of the Danbury police department obtained a warrant for the defendant's arrest, charging her with insurance fraud.

I

The defendant's first claim is that the trial court improperly found that the evidence presented at trial

obtain medical insurance for, and present claims for medical insurance benefits for, or on behalf of, Michael Kovac, which aggregated over $5000, by indicating that said Michael Kovac was her lawful spouse, in violation of Connecticut General Statutes Section 53a-123."

was sufficient to convict her of larceny in the second degree. We disagree.[3]

"When reviewing sufficiency of the evidence claims, we impose a two part analysis. First, we construe the evidence in the light most favorable to sustaining the verdict. . . . Second, we determine whether, from that evidence and all reasonable inferences that it yields, a trier of fact could reasonably have concluded that the defendant was guilty beyond a reasonable doubt. . . . In this process of review, the probative force of the evidence is not diminished because it consists, in whole or in part, of evidence that is circumstantial rather than direct." (Citations omitted.) *State* v. *Scales*, 38 Conn. App. 225, 228, 660 A.2d 860 (1995).

"In determining whether the defendant is guilty, [i]t is the sole right of the . . . trier of the facts to draw all reasonable and logical inferences from the facts as it finds them to exist. . . . It is also the absolute right and responsibility of the [trier] to weigh conflicting evidence and to determine the credibility of the witnesses. . . . Furthermore, in considering the evidence introduced in a case, [triers of fact] are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them

---

[3] At the close of the state's evidence, the trial judge granted the defendant's motion for judgment of acquittal with respect to count one, which charged the defendant, in violation of General Statutes § 53a-215 (a) (1), with defrauding an insurance company by presenting written statements, including information regarding her marital status, and claims for payments with knowledge that the written statements contained false and misleading information. The trial court also granted the defendant's motion for judgment of acquittal with respect to count two, which charged the defendant, in violation of § 53a-215 (a) (2), with intending to aid and abet Michael Kovac in obtaining fraudulent insurance coverage by presenting false and misleading statements and information that the defendant was married to Kovac.

to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct. . . . *State* v. *Roy*, 38 Conn. App. 481, 488–89, 662 A.2d 799 (1995) [cert. denied, 237 Conn. 902, 674 A.2d 1333 (1996)]." (Internal quotation marks omitted.) *State* v. *Garrett*, 42 Conn. App. 507, 512, 681 A.2d 362, cert. denied, 239 Conn. 928, 929, 683 A.2d 397, 398 (1996).

The state had the burden of proving beyond a reasonable doubt that the defendant "knowingly [made] a false representation with the intent to defraud, and that false representation [induced] action that effectively [caused her or another] to receive something of value without compensation." *State* v. *Rochette*, 25 Conn. App. 298, 306, 594 A.2d 1006, cert. denied, 220 Conn. 912, 597 A.2d 337 (1991); see General Statutes § 53a-119. From the facts established and the reasonable inferences to be drawn therefrom, it was reasonable for the court to have found the defendant guilty of second degree larceny. It was undisputed that the defendant obtained medical insurance coverage for Kovac by claiming him as her dependent, that he claimed and received $10,692.94 in benefits as a dependent under the defendant's insurance policy, and that such coverage was limited to the defendant's lawful spouse. Thus, the only issue before the trial court was whether Kovac was, in fact, the defendant's lawful spouse.

The defendant initially claimed that she and Kovac were married on July 21, 1987, in a civil ceremony in Beli Manastir in the former Yugoslavia. The defendant testified that she and Kovac left for Yugoslavia on July 15, 1987, they were married on July 21, 1987, and they returned to the United States on July 22, 1987. Two witnesses testified that they attended the wedding and the defendant offered a marriage certificate that certified her marriage to Kovac in the town of Beli Manastir on July 21, 1987. The marriage certificate that the

defendant introduced into evidence purported to be a copy of the record of the defendant's marriage to Kovac that is maintained in the town hall of Beli Manastir. The certificate refers to Kovac's country of birth as SJR, the Serbo-Croatian abbreviation for the Federal Republic of Yugoslavia. The state called Jonathan Moore, a state department officer, who testified, however, that at the time of the defendant's alleged marriage to Kovac in 1987, that term for the country of Yugoslavia had not yet come into use.

The state also offered into evidence eight checks negotiated by the defendant to various individuals and businesses in the United States between July 16 and July 23, 1987. One of the checks represented payment for an oil delivery on July 20, 1987. The driver identified the defendant as the person who gave him the check in payment for that delivery. Frances Haut testified that she met Kovac in early July, 1987, and that they dated a few times. When she was presented with Kovac's July, 1987 telephone bill, she testified that the bill included charges for two telephone calls to her office and one to her residence. These calls were made on July 20, 23, and 25, 1987. As a result, it was reasonable for the trial judge to find that the defendant and Kovac were not married in Yugoslavia as the defendant claimed.

The defendant now claims that there is no dispute that she and Kovac were married on December 31, 1988, in the Serbian Orthodox Church in Elizabeth, New Jersey. The defendant offered as evidence at trial a copy of the marital registry of the church of the marriage, but no evidence was proffered that a marriage license was issued authorizing the marriage as required by New Jersey Statutes § 37:1-2. The defendant, citing *Carabetta* v. *Carabetta*, 182 Conn. 344, 350, 438 A.2d 109 (1980), argues that "a marriage duly solemnized but deficient for want of a marriage license is not void." The defendant asserts that because the evidence of the religious

ceremony in New Jersey was uncontroverted, the trial court was obliged to find a valid marriage under Connecticut law. The defendant's claim fails for the following reasons.[4]

First, *Carabetta* does not control. In *Carabetta*, the plaintiff and the defendant exchanged marital vows before a priest in the rectory of Our Lady of Mt. Carmel Church in Meriden according to the rite of the Roman Catholic Church. They lived together as husband and wife, raised four children, all of whose birth certificates listed the husband as their father. Until the action for dissolution of marriage, approximately twenty-five years later, the defendant husband had no recollection of ever having denied that the plaintiff and defendant were married. The issue before the *Carabetta* court was whether, under Connecticut law, despite solemnization according to an appropriate religious ceremony, *occurring in Connecticut,* a marriage is void where there has been noncompliance with the statutory requirement of a marriage license. The Supreme Court reversed the judgment of the trial court dismissing the action, disagreeing with the ruling of the trial court that failure to obtain a marriage license was a flaw fatal to the creation of a legally valid marriage and that the court lacked subject matter jurisdiction over an action for dissolution. Because the parties participated in a religious ceremony in Connecticut, the Supreme Court, in its analysis, focused on the provisions of the Connecticut statutes. The Supreme Court noted that "[i]n determining the status of a . . . marriage, we are bound therefore to examine with care the relevant legislative enactments that determine its validity." Id., 346.

---

[4] While the defendant mentions in her brief that the religious ceremony also bears on the question of intent, she neither briefs nor provides an analysis of this argument. We therefore deem this portion of the issue abandoned. *State* v. *Francis,* 228 Conn. 118, 122 n.3, 635 A.2d 762 (1993); *State* v. *Carolina,* 40 Conn. App. 762, 768–69 n.7, 673 A.2d 562, cert. denied, 237 Conn. 914, 675 A.2d 886 (1996).

In our case, the religious ceremony took place not in Connecticut, but in New Jersey, a foreign jurisdiction. As a result, *Carabetta* is not controlling.

In addition, because the ceremony occurred in New Jersey, the validity of the marriage is determined by New Jersey law. It is well established that the validity of a marriage is determined by the law of the jurisdiction where the ceremony was performed. *Fattibene* v. *Fattibene*, 183 Conn. 433, 437, 441 A.2d 3 (1981); *Davis* v. *Davis*, 119 Conn. 194, 197–98, 175 A.2d 574 (1934). New Jersey Statutes § 37:1-2 provides in pertinent part: "Before a marriage can be lawfully performed in this state, the persons intending to be married shall obtain a marriage license from the licensing officer and deliver it to the person who is to officiate . . . ." New Jersey Statutes § 37:1-10 provides that "no marriage . . . shall be valid unless the contracted parties shall have obtained a marriage license as required by section 37:1-2 of this Title . . . ." In *Dacunzo* v. *Edgye*, 19 N.J. 443, 450, 117 A.2d 508 (1955), the New Jersey Supreme Court observed that § 37:1-10 "renders absolutely void a marriage contracted without a license . . . ." Thus, we conclude that the defendant's marriage to Kovac was void under New Jersey law. A priori, no valid marriage existed in Connecticut.

As further proof that the defendant and Kovac were not married, the state offered the defendant's 1987 tax return, on which she claimed single status, and her 1988 and 1990 tax returns, on which she claimed head of household status. In 1991, the defendant testified in two civil cases before the Superior Court concerning her relationship with Kovac. When asked if she and Kovac had ever dated, she replied, "We are friends, so that means no." She also testified that she had seen Kovac approximately five times since 1990. Finally, in September, 1992, she told an insurance investigator who was investigating a claim that she was divorced, and later

swore an affidavit, in which she also indicated that she was divorced.

Kovac described his relationship with the defendant in a deposition given in November, 1992. He admitted that he lived with her for a short period of time and that he had a child with her, but he repeatedly denied that they were married. He maintained that they were merely friends and claimed that there was no romantic relationship between them.

Our review of the foregoing leads us to conclude that the trial court could have reasonably concluded that the defendant was guilty of second degree larceny beyond a reasonable doubt. Thus, the evidence presented at trial was sufficient to convict the defendant.

II

In her second claim, the defendant argues that the trial court improperly found that the charging document stated an offense under the larceny statute. Specifically, the defendant argues that the enactment of General Statutes §§ 53-442 and 53-443 reveals an unexpressed legislative intent to exclude frauds perpetrated against health insurers from the ambit of the larceny statutes. The state argues that this court should not review this claim because the defendant is raising it for the first time on appeal, and, further, the defendant failed to request review under *Evans-Golding*. See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989); *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973).

"It is well established that generally this court will not review claims that were not distinctly raised in the trial court. *State* v. *Tillman*, 220 Conn. 487, 504, 600 A.2d 738 (1991), cert. denied, 505 U.S. 1207, 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992). A defendant may prevail on a claim of constitutional error not preserved at trial, however, if all the conditions of *Evans-Golding* are

satisfied. . . . Here, the unpreserved claim was not claimed under an *Evans-Golding* analysis in the defendant's brief, [nor] argued in his reply brief as a result of the state's anticipatory argument. . . . We, accordingly, decline to review the defendant's claim. Practice Book § [4061]; see *State* v. *Nelson*, 17 Conn. App. 556, 576, 555 A.2d 426 (1989) (refusing to review party's claim because party failed to raise issue at trial and brief failed to argue claim was reviewable under *Evans*); . . . *Adolphson* v. *Zoning Board of Appeals*, 205 Conn. 703, 716, 535 A.2d 799 (1988) (only in most exceptional circumstances will an appellate court consider claim that was not raised in trial court) . . . ." (Citations omitted.) *State* v. *Jones*, 34 Conn. App. 807, 815–16, 644 A.2d 355, cert. denied, 231 Conn. 909, 648 A.2d 158 (1994). We decline, therefore, to review the defendant's claim.

The judgment is affirmed.

In this opinion the other judges concurred.