## STATE OF CONNECTICUT *v.* LIDA NOSIK
## (SC 15652)

Callahan, C. J., and Berdon, Norcott, Palmer and Peters, Js.

Argued December 3, 1997—officially released June 30, 1998

*Andrew B. Bowman*, for the appellant (defendant).

*Michael E. O'Hare*, deputy assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan*, state's attorney, and *Kevin Black*, deputy assistant state's attorney, for the appellee (state).

PETERS, J. The principal issue in this appeal is whether the defendant, Lida Nosik, had the intent necessary for a conviction of larceny in the second degree in violation of General Statutes § 53a-123.[1] The answer to this question turns on whether the defendant lacked a good faith belief that she was legally married to Michael Kovac, also known as Milivoje,[2] whom she listed as a dependent spouse in her application for her employee health insurance policy.

The defendant was charged with the crime of larceny in the second degree.[3] After a trial to the court, *Riefberg, J.*, she was found guilty as charged and sentenced to a period of imprisonment of two years, execution suspended, and a period of probation of five years. The trial court also ordered her to pay restitution.

The defendant appealed to the Appellate Court from the judgment of conviction. The Appellate Court affirmed the judgment of the trial court and rejected the defendant's claims that the trial court improperly had found that: (1) the evidence was sufficient to support her conviction; and (2) the charging document stated an offense under the second degree larceny statute. *State* v. *Nosik*, 44 Conn. App. 294, 295, 689 A.2d 489 (1997).

---

[1] General Statutes § 53a-123 provides in relevant part: "(a) A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119 and . . . the value of the property or service exceeds five thousand dollars . . . ."

General Statutes § 53a-119 provides in relevant part: "Larceny defined. A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

[2] The parties agree that Michael Kovac and Milivoje Kovac are the same person.

[3] The defendant initially was charged with insurance fraud and larceny. The trial court granted the defendant's motion for acquittal on the insurance fraud counts and convicted the defendant of second degree larceny only.

The defendant petitioned for certification to appeal to this court. We granted certification to review the following two questions: "Whether the Appellate Court properly held that: (1) the evidence of the defendant's alleged marriage in New Jersey did not establish a valid marriage under Connecticut law; and (2) as such, the evidence presented at the defendant's trial was sufficient to convict the defendant?" *State* v. *Nosik*, 240 Conn. 922, 692 A.2d 817 (1997). We affirm the judgment of the Appellate Court.

The trial court reasonably could have found the following facts. In September, 1985, the defendant was hired by the Danbury board of education as a school psychologist. On her payroll data sheet, she indicated that she was single. On December 8, 1988, the defendant applied to change her insurance to Blue Cross and Blue Shield of Connecticut, Inc. On her application, she changed her marital status from single to married, and indicated that she had married Kovac on July 5, 1987. On July 1, 1991, the Danbury board of education changed its employee health insurance plan from Blue Cross and Blue Shield of Connecticut, Inc., to CIGNA Healthcare of Connecticut, Inc. (CIGNA). Under the CIGNA plan, only an employee's children and legal spouse were eligible for benefits as dependents. In completing her CIGNA application, the defendant listed Kovac as her husband and the father of her son, Michael.

Between July 1, 1991, and October 6, 1993, CIGNA paid claims totaling $10,692.94 to medical providers on behalf of Kovac. On October 6, 1993, the defendant's employer requested that she produce proof of her marriage to Kovac. Because the defendant failed to produce any such proof, her employer filed a complaint with the Danbury police department. The defendant was charged with insurance fraud and larceny.[4] Rejecting

---

[4] See footnote 3 of this opinion.

her claims that she had entered twice into valid marriage with Kovac, once in the former Yugoslavia and subsequently in New Jersey, the trial court found her guilty of larceny in the second degree.

Following oral argument in this court, we requested an articulation of the trial court's findings of fact regarding the 1988 New Jersey religious marriage ceremony allegedly celebrating the marriage between the defendant and Kovac. In its articulation dated January 12, 1998, the trial court responded that it did not find that a religious *marriage* ceremony had taken place in New Jersey. Rather, it concluded that the defendant had participated in a purported religious ceremony with Kovac to commemorate a marriage that allegedly already had taken place. Furthermore, the trial court did not find that the defendant had participated in this ceremony with the good faith intention of entering into a valid legal marriage.[5]

In this court, the defendant raises one legal issue and two evidentiary questions. She claims that: (1) the Appellate Court improperly concluded that a religious marriage ceremony in New Jersey did not establish a valid marriage under Connecticut law; (2) the trial court's factual finding that she did not participate in good faith in a religious marriage ceremony in New Jersey was clearly erroneous; and (3) the Appellate Court improperly rejected her contention that the evidence presented at her trial was insufficient to support her conviction. We disagree with these claims and affirm the judgment of the Appellate Court.

I

We first address the question of law raised by the defendant's purported ceremonial marriage in New Jersey. We must determine whether the Appellate Court

---

[5] The parties were afforded the opportunity to challenge or to defend the merits of the trial court's supplemental ruling.

properly concluded that the alleged marriage ceremony in New Jersey did not constitute a valid legal marriage in Connecticut under this court's decision in *Carabetta v. Carabetta*, 182 Conn. 344, 350, 438 A.2d 109 (1980). We affirm the judgment of the Appellate Court.

Proper application of our decision in *Carabetta* depends on findings of fact. Unless the findings of fact in this case were overturned, a course which we decline to follow in part II A of this opinion, the defendant's purported union would not constitute a valid legal marriage under *Carabetta*. In *Carabetta*, the "plaintiff and the defendant exchanged marital vows before a priest in the rectory of Our Lady of Mt. Carmel Church of Meriden . . . according to the rite of the Roman Catholic Church . . . ." Id., 345. They failed, however, to obtain a marriage license. Id. "Thereafter they lived together as husband and wife, raising a family of four children, all of whose birth certificates listed the defendant as their father." Id. Until the time of the dissolution action, the defendant husband "had no memory or recollection of ever having denied that the plaintiff and the defendant were married." Id.

In *Carabetta*, we analyzed our statutes governing marriage and marriage licenses, and determined that "the legislature's failure expressly to characterize as void a marriage properly celebrated without a license means that such a marriage is not invalid." Id., 349. Accordingly, we concluded that: " 'The policy of the law is strongly opposed to regarding an attempted marriage . . . entered into in good faith, believed by one or both of the parties to be legal, and followed by cohabitation, to be void.' " Id., 346–47. We further noted that "most such cases arise long after the parties have acted upon the assumption that they are married, and no useful purpose is served by avoiding the long-standing relationship." (Internal quotation marks omitted.) Id., 351.

Thus, in *Carabetta*, we decided not to invalidate legally imperfect marriages if the parties had: (1) participated in a religious rite with the good faith intention of entering into a valid legal marriage; and (2) shared and manifested a good faith belief that they were, in fact, legally married. We conclude in part II of this opinion that neither of these predicates has been established in this case.[6] First, the trial court found that the defendant did not participate in the ceremony in New Jersey with the good faith intention of entering into a valid legal marriage, and we conclude in part II A that we should not disturb that finding. Second, as we discuss in part II, far from holding themselves out as husband and wife, the defendant and Kovac made numerous inconsistent statements—on official documents, in sworn proceedings, and in daily life—describing themselves as single or divorced individuals.[7]

We conclude, therefore, that this court's decision in *Carabetta* does not require reversal of the defendant's conviction in this case. Accordingly, on this issue, we affirm the judgment of the Appellate Court.

---

[6] Even if the defendant's alleged ceremonial marriage had been valid as a matter of Connecticut law, it would have been invalid under New Jersey law. New Jersey Statutes §§ 37:1-2 and 37:1-10 set forth in footnote 8 of this opinion; see *Dacunzo* v. *Edgye*, 19 N.J. 443, 450, 117 A.2d 508 (1955). Such a factual scenario would present a conflict of laws issue. Because the defendant's claimed ceremonial marriage did not meet the requirements of the *Carabetta* test, however, we do not reach the potential conflict of laws problem.

[7] Kovac's statements regarding his marital status are not relevant to the defendant's mental state. Insofar as Kovac's statements are relevant to the issue of whether he and the defendant held themselves out to the world as a married couple, we note that he, too, denied having been married during the relevant time period. In 1991, Kovac filed a petition for naturalization with the Immigration and Naturalization Service indicating that he was single. In 1992, he submitted a form in support of his application indicating that he had not married since filing his petition. Kovac's certificate of naturalization, issued in 1992, states that he is single. In a 1992 deposition in a civil case regarding an insurance matter, Kovac testified that he and the defendant never had been married.

## II

We next address the defendant's evidentiary claims. The defendant argues that: (1) the trial court's finding of fact regarding her purported marriage ceremony in New Jersey was clearly erroneous; and (2) the evidence at trial was insufficient to support her conviction for second degree larceny. We reject both these claims and, therefore, affirm the judgment of the Appellate Court.

### A

We first must determine whether the trial court's finding of fact regarding the defendant's alleged religious marriage ceremony in New Jersey was clearly erroneous. We conclude that it was not.

The defendant claims that she was, in fact, married to Kovac. She also argues that, even if she was not legally married, she participated in a religious marriage ceremony with the good faith intention of marrying Kovac, thereby negating the mens rea required for a conviction of larceny in the second degree.

Our analysis of the trial court's findings regarding the alleged religious marriage in New Jersey must start by taking account of the fact that, at trial, the defendant also claimed that she and Kovac had been married in a civil ceremony on July 21, 1987, in Beli Manastir in the former Yugloslavia. In response, the state introduced evidence that the defendant and Kovac had been in the United States at that time. The state also produced expert testimony that the marriage certificate that the defendant had offered was not authentic. In light of that evidence, the Appellate Court concluded that the trial court reasonably could have found that the defendant and Kovac were not married in the former Yugoslavia in 1987. *State* v. *Nosik*, supra, 44 Conn. App. 299. In this court, the defendant does not challenge the validity of that determination.

Here, as at trial and before the Appellate Court, the defendant alleges that she and Kovac participated in a religious marriage ceremony in the Serbian Orthodox Church in Elizabeth, New Jersey, on December 31, 1988. At trial, Father Gvodzm Petrovic testified that he was an ordained priest and that he had performed the marriage ceremony at St. George's Church. Zoran Jovanovic, a parishioner of St. George's Church, testified that he had witnessed the ceremony. Milka Petrovic testified that she too had acted as a witness. Through Father Petar Petrovic, the pastor of St. George's Church, the defendant introduced a record of the ceremony in the church marriage registry. No one introduced evidence, however, that a marriage license had been issued as required by New Jersey Statutes §§ 37:1-2 and 37:1-10.[8]

In its articulation dated January 12, 1998, the trial court stated that it did not find that a religious *marriage* ceremony had taken place in New Jersey. Rather, it concluded that the defendant had participated in the purported religious ceremony with Kovac to commemorate a marriage that allegedly already had taken place. Furthermore, the trial court did not find that the defendant had participated in this ceremony with the good

---

[8] New Jersey Statutes Annotated § 37:1-2 (West 1968) provides in relevant part: "Before a marriage can be lawfully performed in this state, the persons intending to be married shall obtain a marriage license from the licensing officer and deliver it to the person who is to officiate, but if the marriage is to be performed by or before any religious society, institution or organization, the license shall be delivered to such religious society, institution or organization, or any officer thereof. . . ."

New Jersey Statutes Annotated § 37:1-10 (West 1968) provides in relevant part: "[N]o marriage contracted on and after December first, nineteen hundred and thirty-nine, shall be valid unless the contracting parties shall have obtained a marriage license as required by section 37:1-2 of this Title, and unless, also, the marriage, after license duly issued therefor, shall have been performed by or before any person, religious society, institution or organization authorized by section 37:1-13 of this Title to solemnize marriages; and failure in any case to comply with both prerequisites aforesaid, which shall always be construed as mandatory and not merely directory, shall render the purported marriage absolutely void."

faith intention of entering into a valid legal marriage based on a prior marriage in Yugoslavia.

" 'A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record.' " *State* v. *Joyce*, 243 Conn. 282, 288, 705 A.2d 181 (1997); *State* v. *Oquendo*, 223 Conn. 635, 645, 613 A.2d 1300 (1992); see Practice Book (1998 Rev.) § 60-5, formerly § 4061. A reviewing court " 'cannot retry the facts or pass on the credibility of the witnesses.' " *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 65, 699 A.2d 101 (1997). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. In applying the clearly erroneous standard to the findings of a trial court, we keep constantly in mind that our function is not to decide factual issues de novo. Our authority, when reviewing the findings of a judge, is circumscribed by the deference we must give to decisions of the trier of fact, who is usually in a superior position to appraise and weigh the evidence. . . . The question for this court . . . is not whether it would have made the findings the trial court did, but whether in view of the evidence and pleadings in the whole record it is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Doyle* v. *Kulesza*, 197 Conn. 101, 105, 495 A.2d 1074 (1985).

We conclude that, in light of the evidence in the record, the trial court's factual findings regarding the ceremony in New Jersey were not clearly erroneous. Father Petar Petrovic testified, as pastor at St. George's Church, that, if a couple told him that they did not have a marriage license and never had participated in a civil ceremony, he would not perform a religious wedding

rite for them.[9] In the space marked "license" on the certificate issued by St. George's, the registrar indicated that the defendant and Kovac previously had been married in a civil ceremony in the former Yugoslavia. Thus, the trial court reasonably could have concluded that the service at St. George's was not a solemnization of the defendant's alleged previous civil marriage, but a nullity, a ploy by the defendant and Kovac to avoid a valid marriage. The defendant now has virtually conceded that, in fact, she had not participated in a civil ceremony abroad.

In addition, the defendant's numerous conflicting statements regarding her marital status during the relevant time period support the conclusion that she did not have a good faith intent to enter into a valid legal marriage. The defendant filed her 1987 tax return as a single person, despite the fact that Internal Revenue Service regulations require individuals who are married during a calendar year to file as married people. The defendant's certified public accountant testified at trial that he had prepared her 1988, 1989 and 1990 tax returns as a head of household filing, and that he would not have done so had the defendant told him she was married. In a civil trial in 1991, the defendant testified under oath that Kovac was only "a friend." When asked if she ever had dated Kovac, she responded, "We are friends, so that means no." In another civil case, also in 1991, the defendant testified that she knew Kovac because she did typing for him, and, in another colloquy, because he had done plumbing work for her. In a statement and

---

[9] Father Petar Petrovic also testified that if a parishioner lied about having undergone a civil marriage ceremony, and thereby induced him to perform a religious rite, he would consider the religious marriage valid in a spiritual sense. This statement does not necessarily contradict, however, the trial court's finding that the ceremony at St. George's was not a *wedding* ceremony, but rather the commemoration of an alleged marriage in the past.

an affidavit relating to a 1992 motor vehicle insurance claim, the defendant attested that she was divorced.[10]

In light of these facts, the trial court reasonably could have concluded that the defendant did not participate in the ceremony in New Jersey with the good faith belief that she was entering into a valid legal marriage. We conclude, therefore, that the trial court's finding that the service at St. George's was not a valid wedding ceremony was not clearly erroneous.

B

Finally, we must determine whether there was sufficient evidence to support the defendant's conviction for larceny in the second degree. The critical issue before the trial court was whether the defendant had the intent to commit larceny when she claimed Kovac as her spouse on her insurance form.

The requisite intent for larceny in the second degree is "the intent permanently to deprive the owner of the property without color of right or excuse for the act." *State* v. *Rochette*, 25 Conn. App. 298, 305–306, 594 A.2d 1006, cert. denied, 220 Conn. 912, 597 A.2d 337 (1991), cert. denied, 502 U.S. 1045, 112 S. Ct. 905, 116 L. Ed. 2d 806 (1992). Accordingly, the state bore the burden of proving beyond a reasonable doubt that the defendant "knowingly [made] a false representation with the intent to defraud, and that [that] false representation . . . induce[d] action that effectively cause[d] the accused to receive something of value without compensation." Id., 306.

---

[10] To support her claim that she was married, the defendant offered the now discredited marriage certificate from her alleged civil marriage ceremony in the former Yugoslavia, her son's school registration forms indicating his parents' marital status as married, a letter from her son's Boy Scout troop referring to the defendant as "Lida Kovac," and a 1993 mortgage agreement referring to "Lida Nosik, A Married Woman."

Intent to defraud almost always must be proven by circumstantial evidence. See *State* v. *Green*, 194 Conn. 258, 273, 480 A.2d 526 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985); *State* v. *Holley*, 174 Conn. 22, 25–26, 381 A.2d 539 (1977). "A person's intent is to be inferred from his conduct and the surrounding circumstances and is an issue for the [trier of fact] to decide." *State* v. *Rochette*, supra, 25 Conn. App. 306.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Torres*, 242 Conn. 485, 489, 698 A.2d 898 (1997). " 'On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier of fact's] verdict of guilty.' " Id., 490.

We are persuaded that the trial court reasonably could have found that the evidence was sufficient to support the defendant's conviction. As we observed in part II A of this opinion, during the relevant time period, the defendant made numerous inconsistent statements regarding her marital status on official forms and in sworn proceedings. "In evaluating evidence that could yield contrary inferences, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier [of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be

reasonable and logical." (Citation omitted; internal quotation marks omitted.) *State* v. *DeJesus*, 236 Conn. 189, 195–96, 672 A.2d 488 (1996).

We conclude that the trial court reasonably could have determined, beyond a reasonable doubt, that the defendant did not have a good faith belief that she was married to Kovac at the time she claimed him as her husband for insurance purposes. We concur with the Appellate Court, therefore, that the trial court reasonably could have concluded that the defendant was guilty of second degree larceny. *State* v. *Nosik*, supra, 44 Conn. App. 302.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.