[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I. STATEMENT OF APPEAL
The plaintiff, Lida Nosik, appeals from the decision of the defendant, the Danbury Board of Education, terminating the plaintiff's teaching contract. The Board of Education (Board) acted pursuant to General Statutes § 10-151 (d), part of the Teachers' Tenure Act. The plaintiff appeals this decision pursuant to § 10-151 (e).
 II. BACKGROUND
On October 5, 1993, John Eriquez, the Director of Personnel for the board, received a telephone call from a local news reporter advising him that Nosik, at all times pertinent to this appeal a tenured teacher employed by the board, was going to be arrested on charges of fraud. A subsequent article in the newspaper made reference to Nosik and her "boyfriend," Michael Kovac. When Eriquez recalled that Nosik had listed Michael Kovac as her husband on health insurance forms, he began an investigation, which included demanding proof of marriage from Nosik on October 6, 1993. Eriquez informed Nosik that she was suspended pending further investigation of the charges against her. (Vol. III, Exhibit 8). On November 17, 1993, the board informed Nosik that her contract of employment was under consideration for termination. (Vol. I, Exhibit 1). Nosik was supplied with a statement of the reasons for consideration of the termination by the board. (Vol. I, Exhibits 3; 7). Nosik made a timely request for a hearing before a single impartial hearing officer. (Vol. I, Exhibit 5). Following the hearings and submission of briefs by the parties, the hearing officer released his findings and recommendation on March 30, 1995. The hearing officer found that because Nosik had been "shown to be guilty of CT Page 4337 obtaining over $22,000 for herself and/or Michael Kovac, by fraud and deceit, which constitutes `moral misconduct' as contemplated by Section 10-151 (7)(d)(3), C.G.S. Rev. `58, as amended, it is recommended that her employment with the Danbury Board of Education be terminated." (Vol IV, Exhibit K, Impartial Hearing Panel Decision, p. 10). On April 26, 1995, the Board voted to terminate Nosik's contract of employment, and issued a written decision on April 27, 1995. (Complaint, ¶¶ 6-7). Nosik received the board's decision on April 28, 1995. (Complaint, ¶ 8).
The plaintiff filed the present appeal on May 24, 1995. The specified grounds for the appeal are that the decision of the board terminating the plaintiff's contract of employment, and the findings of fact and recommendations upon which that decision was based, were: (a) clearly erroneous and unsupported by substantial or reliable evidence on the whole record; (b) arbitrary and capricious; (c) in violation of due process in that there was inadequate notice of some or all charges against the plaintiff; (d) in violation of General Statutes § 10-151 (d)(3) and (6); (e) affected by other error of law; and (f) was made in bad faith. On February 15, 1996, the plaintiff filed her brief in support of the administrative appeal. The board filed its own brief dated April 29, 1996.
 III. JURISDICTION
Any "teacher aggrieved by the decision of a board of education . . . may appeal therefrom, within thirty days of such decision, to the Superior Court." General Statutes § 10-151
(e). "When considering termination of a tenured teacher's employment contract, a school board acts like an administrative agency, in a quasi-judicial capacity." (Internal quotation marks omitted.) Tomlinson v. Board of Education, 226 Conn. 704, 712,629 A.2d 333 (1993). "Where a right to judicial review is created by statute, the failure to satisfy the conditions required by the statute deprives the Superior Court of jurisdiction to entertain the appeal." Drahan v. Board of Education, 42 Conn. App. 480,491, 680 A.2d 316, cert. denied, 239 Conn. 921, 682 A.2d 1000
(1996).
 A. Aggrievement
"Pleading and proof of aggrievement is a prerequisite to a trial court's jurisdiction over the subject matter of an CT Page 4338 administrative appeal." Blau v. State Board of Education,19 Conn. App. 428, 430, 562 A.2d 586 (1989). A tenured teacher's right to continued employment implicates a property interest.Rado v. Board of Education, 216 Conn. 541, 555, 583 A.2d 102
(1990). In the present case, the plaintiff has alleged that her employment as a tenured teacher was terminated by the decision of the board. Therefore, the plaintiff is aggrieved.
 B. Timeliness and Service of Process
General Statutes § 10-151 (e) provides that "[a]ny teacher aggrieved by the decision of a board of education after a hearing as provided in subsection (d) of this section may appeal therefrom, within thirty days of such decision, to the Superior Court."
The Board terminated the plaintiff's employment on April 27, 1995, and the plaintiff was notified of the board's decision on April 28, 1995. The defendant was served on May 22, 1995 and the appeal was filed on May 24, 1995. The appeal, therefore, is timely.
 IV. SCOPE OF REVIEW
"[O]n appeal from a school board decision, the proper scope of review is that applicable to administrative appeals."Tomlinson v. Board of Education, supra, 226 Conn. 712. "The court, upon such appeal and hearing thereon, may affirm or reverse the decision appealed from in accordance with subsection (j) of section 4-183." General Statutes § 10-151 (e). "General Statutes § 4-183 (j) . . . permits modification or reversal of an agency's decision if substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions or decisions are: (1) [i]n violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Tomlinson v. Board ofEducation, supra, 712-13.
"When considering termination of a tenured teacher's employment contract, a school board acts, like an administrative CT Page 4339 agency, in a quasi-judicial capacity." (Internal quotation marks omitted.) Barnett v. Board of Education, 232 Conn. 198, 206,654 A.2d 720 (1995). "A school board has discretion to accept or reject a recommendation from an impartial hearing panel, though it is bound by the panel's findings of fact unless unsupported by the evidence. . . . The board is bound by the panel's findings of fact, but not by its legal conclusions or by its recommendations." (Citations omitted; internal quotation marks omitted.) Id.
"Judicial review of the school board's administrative decision follows established principles of administrative law. The court's ultimate duty is only to decide whether, in light of the evidence, the [board] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically flow from such facts. . . ." (Citations omitted; internal quotation marks omitted.) Sekor v. Board of Education, 240 Conn. 119, 125,689 A.2d 1112 (1997).
The reviewing court is limited to determining whether the actions of the board were based on substantial evidence in the record. Barnett v. Board of Education, supra, 232 Conn. 211. The so-called substantial evidence rule "is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . . The substantial evidence rule is a compromise between opposing theories of broad or de novo review and restricted review or complete abstention. It is broad enough and capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. On the other hand, it is review of such breadth as is entirely consistent with effective administration. . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial CT Page 4340 evidence . . ." (Citations omitted; internal quotation marks omitted.) Id.
 V. DISCUSSION
Nosik argues that any decision to terminate her employment because she did not have a valid civil marriage license or because she was subsequently convicted of larceny based upon her marital status is arbitrary, capricious and constitutes an abuse of discretion, because such a decision would be based upon a clearly erroneous view of the law. Nosik contends that the issue relating to her marital status at the time she applied for group medical insurance is critical to this appeal. Nosik makes reference to the fact that her criminal case, in which she was charged and convicted of one count of second degree larceny, also involved whether she was married to Kovac at the time she listed Kovac as her husband on insurance forms. Nosik argues that neither the criminal trial judge nor the hearing officer here dealt with the issue now raised, which is whether Connecticut recognizes a marriage which is duly solemnized in the absence of a valid marriage license, pursuant to Carabetta v. Carabetta,182 Conn. 344, 438 A.2d 109 (1980)[1].
Nosik filed her brief appealing the hearing officer's findings on February 15, 1995. Subsequently, Nosik appealed her criminal conviction to the Appellate and Supreme Courts, both of which affirmed Nosik's conviction. State v. Nosik,44 Conn. App. 294, 689 A.2d 489 (1997), aff'd, 245 Conn. 196,715 A.2d 673, cert. denied, ___ U.S. ___, 119 S.Ct. 547,142 L.Ed.2d 455 (1998). Before the Appellate Court, Nosik argued that she and Kovac had been married in a civil ceremony on July 21, 1987, in Beli Manastir in the former Yugoslavia. State v. Nosik, supra,245 Conn. 203. The state produced expert testimony that the marriage certificate that Nosik had offered was not authentic, and the Appellate Court concluded that Nosik and Kovac were not married in the former Yugoslavia in 1987. Id.[2] Nosik did not appeal this finding of the Appellate Court to the Supreme Court. Id. Before both the Appellate and Supreme Courts, however, Nosik argued that she and Kovac participated in a religious marriage ceremony in the Serbian Orthodox Church in Elizabeth, New Jersey, on December 31, 1988. Id., 204.[3] The Supreme Court noted that at Nosik's larceny trial, Father Gvodzm Petrovic testified that he was an ordained priest and that he had performed the marriage ceremony in New Jersey. Id.[4] Zoran Jovanovic, a parishioner CT Page 4341 of St. George's Church, testified that he had witnessed the New Jersey ceremony. Id. Milka Petrovic testified that she too had acted as a witness. Id. Through Father Petar Petrovic, the pastor of St. George's Church, Nosik introduced a record of the ceremony in the church's marriage registry. Id. No evidence was introduced, however, that a marriage license had been issued as required by New Jersey law. Id.
The Supreme Court also found that the trial court, Riefberg, J., did not commit clear error when it concluded that: (1) it did not find that a religious marriage ceremony had taken place in New Jersey, but that Nosik had participated in the purported religious ceremony with Kovac to commemorate a marriage that allegedly already had taken place in Yugoslavia; and (2) that Nosik had not participated in the New Jersey ceremony with the good faith intention of entering into a valid legal marriage based on a prior marriage in Yugoslavia. Id., 204-05. In upholding the findings of the trial court, the Supreme Court further found that "[i]n the space marked `license' on the certificate issued by St. George's, the registrar indicated that [Nosik] and Kovac previously had been married in a civil ceremony in the former Yugoslavia. Thus, the trial court reasonably could have concluded that the service at St. George's was not a solemnization of [Nosik's] alleged previous civil marriage, but nullity, a ploy by [Nosik] and Kovac to avoid a valid marriage. [Nosik] now has virtually conceded that, in fact, she had not participated in a civil ceremony abroad." Id., 206. The Supreme court also took note of Nosik's numerous conflicting statements regarding her marital status and found that these conflicting statements supported the conclusion that she did not have a good faith intent to enter into a valid legal marriage. Id. specifically, Nosik filed her 1987 tax return as a single person, despite the fact that Internal Revenue Service regulations require individuals who are married during a calendar year to file as married people; her certified public accountant testified at trial that he had prepared her 1988, 1989 and 1990 tax returns as a head of household filing, and that he would not have done so had Nosik told him she was married;[5] in a civil trial in 1991, Zosik testified under oath that Kovac was only "a friend," and when asked if she had ever dated Kovac, she responded, "We are friends, so that means no"[6]; in another civil case, also in 1991, Nosik testified that she knew Kovac because she did typing for him, and, in another colloquy, because he had done plumbing work for her; and in a statement and an affidavit relating to a 1992 motor vehicle insurance claim, Nosik attested CT Page 4342 that she was divorced. Id., 206-07.[7]
Although not part of the hearing officer's decision, the issue of whether Nosik and Kovac were married under Connecticut law was subsequently ruled upon by the Appellate Court and the supreme Court. Their interpretation of Carabetta bolsters the ultimate finding of the hearing officer that Nosik and Kovac were not married. Thus, Nosik's claim that "any decision to terminate Lida Nosik either because she did not have a valid civil [marriage] license or because she was subsequently convicted of larceny based upon her marital status is arbitrary, capricious and constitutes an abuse of discretion, because such a decision would be based upon a clearly erroneous view of the law," is incorrect. The court concludes that the board's decision is not cased upon a clearly erroneous view of the law and therefore is not arbitrary, capricious or an abuse of discretion,[8] since Nosik was not "married" according to the holding in Carabetta.
Nosik also attacks the conclusion of the hearing officer on the ground that he failed to consider the testimony of witnesses at St. George Serbian Orthodox Church, such as Father Petrovic and other witnesses. Nosik relies on their testimony to support her argument that her marriage was duly solemnized in New Jersey in 1988, and therefore the invalid civil marriage licensed issued by the former Yugoslavia in 1987 does not void her marriage to Zovac. For the reasons discussed above, however, the Supreme court has concluded that Nosik did not participate in the New Jersey ceremony with the good faith intention of entering into a valid legal marriage, and in fact has made many statements inconsistent with the notion that she and Kovac were ever married. Therefore, in light of the subsequent findings of the appellate and Supreme Court, the testimony of witnesses to the New Jersey ceremony concerning their belief that the New Jersey ceremony was legitimate is now irrelevant. In addition, "[t]he defendant board is an administrative agency, although it acts in a quasi-judicial capacity. To render a decision, it must weigh evidence and reach conclusions. . . . The credibility of witnesses and the determination of issues of fact are matters within its province." Tomlinson v. Board of Education, supra,226 Conn. 713.[9]
Nosik's conviction of larceny in the second degree, in violation of General Statutes § 53a-123,[10] a class C felony, has been affirmed by our highest court. In Rado v. Boardof Education, supra, 216 Conn. 545, a tenured Naugatuck high CT Page 4343 school teacher was suspended and ultimately terminated following his arrest on three counts of eavesdropping in violation of General statutes § 53a-189, a class D felony. The school board's decision relied in part on "moral misconduct." On appeal, the Supreme Court held that "[w]e have not previously defined `moral misconduct' for the purpose of § 10-151 (d), nor do we find it necessary in this case to essay a comprehensive definition of that term. The finding of the panel that the plaintiff had tampered with the school telephone system for the purpose of overhearing conversations of other persons involves conduct proscribed by § 53a-189, which makes such eavesdropping a class D felony. A legislative determination that certain conduct should be punished as a crime is highly significant in deciding whether it constitutes `moral misconduct.' The conclusion of the board that the plaintiff's behavior fell within this classification, therefore, cannot be characterized as arbitrary or illegal." Id., 553. See also Gedney v. Board of Education ofthe Town of Groton, 47 Conn. App. 297, 298, 703 A.2d 804 (1997) cert. denied, 243 Conn. 968, 707 A.2d 1268 (1998) (plaintiff, a tenured fourth grade teacher in the Groton public school system, was arrested and charged with possession of cocaine, a felony, in violation of General Statutes § 21a-279 (a), and possession of drug paraphernalia, a misdemeanor, in violation of General statutes § 21a-267, which constituted moral misconduct for purposes of § 10-151 (d)).
Accordingly, this court concludes that Nosik's conviction for larceny in the second degree is sufficient in itself to constitute "moral misconduct" for purposes of General Statutes § 10-151 (d). Therefore, the court need not examine whether the board's decision to terminate Nosik's employment based upon her purported fraudulent automobile insurance claims was based on evidence in the record,[11] because there is already ample evidence in the record to support the finding that the plaintiff engaged in moral misconduct based upon her wrongful collection of health insurance benefits.
 VI. CONCLUSION
This court concludes that the board's decision to terminate Nosik's employment was not based upon an erroneous view of the Supreme Court's decision in Carabetta v. Carabetta. It is noted that the recommendation of the hearing officer and decision of the board to terminate Nosik's employment on the ground of moral misconduct is supported by the fact that when considering CT Page 4344 substantially similar evidence, the Appellate and Supreme Courts concluded that Nosik's conviction of larceny in the second degree was not clearly erroneous. Accordingly, Nosik's appeal from the decision of the board to terminate her employment as a tenured teacher is denied, and the decision of the board to terminate her employment as a tenured teacher is affirmed.
Cocco, Judge