102 N.J. Super. 253 (1968)
245 A.2d 771
JULIO LOPEZ, PLAINTIFF,
v.
CARIDA RODRIQUEZ LOPEZ, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided July 18, 1968.
*254 Mr. Raymond P. Vivino for plaintiff.
ROSENBERG, J.C.C. (temporarily assigned).
On July 10, 1968 plaintiff Julio Lopez appeared at a hearing before me seeking to annul his marriage to defendant Carida Rodriquez Lopez. It is clear from the pleadings that on or about May 4, 1966 a contract for marriage by proxy was entered into between said parties wherein plaintiff, a resident of New Jersey, and defendant, a resident of Havana, Cuba, executed and then forwarded between the respective countries documents of marriage while each remained in his own country.
Initially, in order to resolve the status of these parties, it is first necessary to determine which law to apply. In Bucca v. State, 43 N.J. Super. 315 (Ch. Div. 1957), plaintiff, a resident of New Jersey, met his alleged wife on a visit *255 to Italy and married there. Subsequently, on his return to this State he sought to bring his alleged wife here. Nowhere in the moving papers was there any evidence that plaintiff intended to remain in Italy and establish his domicile there.
"* * * It may, therefore, be inferred that it was the intention of these parties at the time of the ceremony in Italy to establish their family domicil in New Jersey. Therefore, the validity of the status of these parties should be determined by the law of New Jersey." (at p. 321)
In the instant case the facts at the hearing disclosed that plaintiff, a resident of New Jersey, had met his alleged wife in Cuba and on his return here had asked her to marry by proxy, to which she agreed. The proxy was then executed. Thereafter, he had endeavored several times without success to arrange for her to come to New Jersey by telephoning her and withdrawing money for her passage.
Therefore, under the reasoning in Bucca, it may be inferred that at the time the proxy marriage was entered into, the parties intended to make New Jersey their family domicile. Consequently, the validity of the proxy marriage should be determined by the law of New Jersey.
Research has failed to disclose any statute or case law in this State respecting the validity or invalidity of proxy marriages. In other states where common law marriages were recognized as valid, proxy marriages were also considered valid. 55 C.J.S. Marriage § 6. In New Jersey, however, N.J.S.A. 37:1-10 in effect invalidates all common law marriages which may have been declared valid according to common law principles and, in addition, provides that any marriage contracted after 1939 is invalid unless there is a valid license and solemnization. Dacunzo v. Edgye, 19 N.J. 443, 451 (1955).
Does a proxy marriage meet the statutory requirements of N.J.S.A. 37:1-10 and other appropriate sections of that chapter? A clear example of a court invalidating a proxy marriage which did not comply with a statutory provision *256 is found in an Ohio case, Respole v. Respole, 34 Ohio Aps. 1, 70 N.E.2d 465, 170 A.L.R. 942 (C.P. 1946). In that case plaintiff, a resident of Ohio, entered into a proxy marriage in West Virginia. The court, in applying West Virginia law, stated:
"Since proxy marriage is not authorized by the statutory law of West Virginia and no exact ceremony is provided for celebrating the rites of marriage then the statutory law of West Virginia comprehend and requires a solemnization of the marriage ceremony as that term is generally understood and applied in law. Solemnization of marriage, or the celebration of the marriage ceremony or rites comprehends a personal appearance together by the contracting parties before one authorized by law to celebrate marriage ceremonies, and that the marriage ceremonies or rites be entered into and performed by the parties to such marriage together with the minister or other person authorized to perform such in the presence of each other and one or more witnesses, in order that the fact of the marriage contract may have due publication for the sake of notoriety and the certainty of its being made."
Such reasoning is applicable to New Jersey; the failure of the proxy marriage to comply with the statutory requirements, such as solemnization, renders it subject to annulment by either party.
Assuming, arguendo, the validity of the proxy marriage, the marriage may also be annulled by reason of defendant's fraud. Annulment of marriage on the ground of fraud is granted only when fraud is of an extreme nature, and goes to an essential of the marriage and where the proof is clear and convincing. Pisciotta v. Buccino, 22 N.J. Super. 114, 117 (App. Div. 1952). Yet it has been held that an unconsummated marriage is little more than an engagement to marry and may be annulled for fraud which will render ordinary contracts voidable. Houlahan v. Horzepa, 46 N.J. Super. 583 (Ch. Div. 1957). In other words, a nonconsummated marriage may be annulled for less fraud than would be necessary if the marriage had been consummated. 10 N.J. Practice (Herr, Marriage, Divorce and Separation), § 27 (3d ed. 1963). Here, the testimony is sufficient to establish *257 that the alleged wife fradulently intended not to consummate the marriage at its inception. More specifically, plaintiff testified that ever since the parties agreed to and then did in fact marry by proxy in 1966, defendant repeatedly refused to come to the United States  "she didn't care." Plaintiff also testified that there was never any consummation of the marriage. In addition, the two other witnesses, Ruben Lopez and Louis Fernandez, revealed that they knew plaintiff for 2 to 2 1/2 years, respectively and that they never saw defendant. Fernandez further testified that on one occasion he was present when plaintiff called defendant in Cuba asking her to come to New Jersey.
I am satisfied from the evidence of defendant's repeated refusal to join plaintiff in the United States since the proxy agreement was entered into, that the marriage was not consummated, that defendant did, in fact, from the inception of the marriage form a fixed determination not to consummate the marriage and, therefore, committed such a fraud as to constitute a ground for annulment.
For either of the foregoing reasons, plaintiff's annulment is hereby granted.