144 N.J. Super. 540 (1976)
366 A.2d 713
JUAN TORRES, PLAINTIFF,
v.
DIAMELBA TORRES A/K/A RODRIGUEZ, DEFENDANT.
Superior Court of New Jersey, Chancery Division (Matrimonial).
Decided October 15, 1976.
*541 Mr. Leonard J. Altamura for plaintiff (Messrs. Altamura, Hughes, Farber, Finnerty & Krause, attorneys; Mr. Altamura, on the brief).
Mr. Raul F. Tous for defendant (Mr. Raul F. Tous on the brief).
HECKMAN, J.S.C.
The matter comes before the court on plaintiff's motion for summary judgment to annul a marriage contracted by proxy in Cuba. The material facts are not in dispute and lend themselves to resolution by summary judgment. Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67 (1954). Plaintiff, a Cuban national at the time of the marriage, had known defendant in Cuba for sometime before escaping to the United States on May 8, 1967. Defendant, also a Cuban national, remained domiciled in Cuba, and plaintiff took up residence in New Jersey. Plaintiff states by way of affidavit that he sent his proxy to Cuba on October 28, 1967, where a ceremony of marriage took place. A copy of the Cuban certificate of marriage was produced by defendant. The authenticity of the certificate *542 is not in issue. Some months after the marriage defendant came to the United States to live with plaintiff. A child was born to the couple on April 7, 1969. The parties resided together in New Jersey until January 1975.
The sole issue presented is whether a proxy marriage will be recognized by the State of New Jersey. Research has failed to disclose any precedent in this State, although the issue has been raised in other trial courts of this State.
Plaintiff in his trial brief relies upon Lopez v. Lopez, 102 N.J. Super. 253 (Ch. Div. 1968), which involved a plaintiff husband who was a resident of New Jersey and a defendant-wife who was a resident of Cuba. These people were purportedly married by proxy on or about May 4, 1966. The entire problem arose as a result of defendant's repeated refusal to join her husband in New Jersey. The court found as a fact that the wife fraudulently induced plaintiff to enter into the proxy marriage, never intending to reside in New Jersey with her husband. Lopez, supra, at 257. The court therein, by way of obiter dictum declared all proxy marriages subject to annulment on the ground that they failed to comply with the statutory requirement of solemnization, N.J.S.A. 37:1-10. The court utilized the definition of "solemnization" as found in Respole v. Respole, 34 Ohio Ops. 1, 70 N.E.2d 465, 170 A.L.R. 942 (C.P. 1946):
Solemnization of marriage, or the celebration of the marriage ceremony or rites comprehends a personal appearance together by the contracting parties before one authorized by law to celebrate marriage ceremonies, and that the marriage ceremonies or rites be entered into and performed by the parties to such marriage together with the minister or other person authorized to perform such in the presence of each other and one or more witnesses, in order that the fact of the marriage contract may have due publication for the sake of notoriety and the certainty of its being made.
This interpretation of the word "solemnization" need not be accepted by the State of New Jersey. Justice Pashman, in Parkinson v. J & S Tool Co., 64 N.J. 159 (1974), dealing with a de facto spouse claiming under workmen's compensation *543 dependent status, spoke of the intent of N.J.S.A. 37:1-10. The purpose of the statute was to invalidate common-law marriages and any other marriage in which there was a lack of legal process and lack of commitment. (at 163). The intent of the statute is to prevent illegitimate common-law unions which are marked by this lack of commitment and which union may dissolve at any moment. The uncertainty as to economic support and dependency are the primary concerns of the State.
The interest of the State as evidenced by this statute, is not diminished by recognizing a proxy marriage. The marriage in this case occurred on October 28, 1967 in a country recognizing such ceremonies of marriage. Plaintiff husband complied with the necessary legal processes of the Cuban statute in that he specifically named a person to stand in his stead in Cuba, by executing a special power of attorney. The marriage was recorded by the proper authorities in Havana, Cuba, and a certificate of marriage was issued by the Register of Vital Statistics of Havana, Cuba. The requirement of New Jersey that there be a recognition of legal process has thus been met by the parties.
The only other requirement of the statute is that there be a showing of commitment. This requirement is evidenced by the facts in this case. Plaintiff husband went to great lengths to become married, a certificate of marriage was issued, defendant came to the United States, the couple used the same surname, they lived together as man and wife in the same house for seven years, and a child was born to them. In the eyes of the public, these people constituted a family unit.
The requirement of solemnization can thus be met by both a showing of legal process and a showing of commitment. I find no reason in the law to justify the conclusion that all proxy marriages are void. Lopez, supra, by obiter dictum declared proxy marriages to be void, but the decision is based on an alternative ground  fraud.
*544 There is nothing in the facts at bar nor in New Jersey law so strongly indicative of an inflexible and unyielding conviction as to warrant setting aside this marriage.
In addition, I find plaintiff husband barred by the doctrines of collateral estoppel and unclean hands from attacking the marriage of which he was the prime beneficiary and primarily responsible for its creation. Dacunzo v. Edgye, 19 N.J. 443 (1955); Hansen v. Fredo, 123 N.J. Super. 388 (Ch. Div. 1973).
Thus, to effect equity and justice and in good conscience, I must deny plaintiff's motion.