# HODA FATHI YUSUF HAMED, Appellant/Plaintiff
## v.
# HISHAM MOHAMMED HAMED, Appellee/Defendant

S. Ct. Civil No. 2014-0008

Supreme Court of the Virgin Islands

July 20, 2015

530

Kye K. Walker, Esq., The Walker Legal Group, St. Croix, USVI, *Attorney for Appellant.*

CAROL ANN RICH, ESQ., Dudley Rich Davis LLP, St. Thomas, USVI, *Attorney for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(July 20, 2015)

HODGE, *Chief Justice*. Hoda Fathi Yusuf Hamed[1] appeals from the Superior Court's January 31, 2014 order, which dismissed her petition for divorce. Because the parties' failure to obtain a license prior to having their marriage solemnized did not render their marriage void or voidable, we reverse.

## I. BACKGROUND

On May 7, 1999, Hoda and the appellee, Hisham Mohammed Hamed, participated in a ceremony before an imam and their family in an Islamic mosque on the island of St. Croix. At the conclusion of the ceremony, Hoda and Hisham were issued a "Marriage Certificate" by the Virgin Islands International Islamic Society, signed by the imam. However, Hoda and Hisham never obtained a Virgin Islands marriage license prior to that ceremony. Although Hoda and Hisham later applied for a marriage license with the Superior Court of the Virgin Islands in 2008, they did not pick up that license after it was issued and did not subsequently re-solemnize their marriage. At all pertinent times, Hoda and Hisham cohabitated, and four children were born during their relationship.

On March 22, 2013, Hoda filed a petition for divorce with the Superior Court, requesting dissolution of her marriage as well as alimony, child support and custody, and distribution of various joint assets. Hisham moved to dismiss Hoda's petition on April 30, 2013, alleging that he and Hoda were never legally married. He also filed a counterclaim for child custody. Shortly thereafter, Hoda opposed Hisham's motion to dismiss, and filed a cross-motion for summary judgment.

---

[1] Because both parties to this appeal share the same last name, to minimize confusion, we shall refer to each party by their first name.

■ The Superior Court, in a January 31, 2014 order, granted Hisham's motion to dismiss.[2] Relying on an unpublished opinion of the Appellate Division of the United States District Court of the Virgin Islands, *In re Khalil*, D.C. Civ. App. Nos. 2001/183, 31/2001, 2003 U.S. Dist. LEXIS 6229 (D.V.I. App. Div. Apr. 4, 2003), the Superior Court reasoned that Virgin Islands law requires a prospective husband and wife to obtain a marriage license from the Superior Court prior to having the marriage solemnized. Moreover, the Superior Court rejected Hoda's alternate argument that Hisham should be equitably estopped from challenging the legality of their marriage. Even though it had already set a February 10, 2014 trial date, the Superior Court, without providing any reasoning for its decision, dismissed the divorce complaint, including both parties' claims for child custody, and directed that any action for custody or visitation be filed as a new case.[3]

Hoda timely filed her notice of appeal with this Court on February 4, 2014. This Court, recognizing that the issues Hoda raised on appeal implicated Virgin Islands statutes involving the fundamental right to marriage in the Virgin Islands, issued a June 18, 2014 order advising the Virgin Islands Attorney General of the appeal and permitting the

---

[2] Hisham and the Superior Court characterized the absence of a valid marriage as a defect in the Superior Court's subject-matter jurisdiction. But the Superior Court has subject-matter jurisdiction over Hoda's divorce action under 4 V.I.C. § 76(a) and 16 V.I.C. § 106 even if the marriage in this case were invalid. The absence of a valid marriage would simply affect the Superior Court's ability to grant the requested relief — the divorce — and so Hisham's motion is more appropriately characterized as a motion to dismiss for failure to state a claim upon which relief could be granted, as opposed to a motion challenging the Superior Court's subject-matter jurisdiction. *Ottley v. Estate of Bell*, 61 V.I. 480, 495 (V.I. 2014) ("Failure to [follow a statutory procedure] does not remove the case from the court's jurisdiction, but simply requires the court to dismiss it for failure to state a claim upon which relief may be granted."); *accord DeGroot v. People*, S. Ct. Crim. No. 2008-0107, 2013 V.I. Supreme LEXIS 16, *4 (V.I. Apr. 29, 2013) (unpublished) ("[A] defect in an information does not deprive the Superior Court of its power to adjudicate a criminal case, but rather goes to the merits of the case.") (citing *Tindell v. People*, 56 V.I. 138, 146-47 (V.I. 2012)).

[3] Although not raised as an issue on appeal by the parties, we note that the Superior Court's dismissal of both parties' child custody claims was unquestionably in error, given that the Superior Court can make custody determinations regardless of whether the children's parents are legally married. By dismissing the child custody claims — despite having already set a trial date — and directing the filing of a new petition, the Superior Court engaged in a procedure that "runs counter to the interests of judicial economy" by requiring Hoda "to reinstate an action and pay a second filing fee" for essentially no reason at all. *In re Reynolds*, 60 V.I. 330, 336 (V.I. 2013).

Government of the Virgin Islands to file a brief pursuant to Supreme Court Rule 22(n). The Government, however, elected not to file such a brief.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

This Court possesses jurisdiction over this appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which vests us with jurisdiction over "all appeals arising from final judgments, final decrees, [and] final orders of the Superior Court." Since the Superior Court's January 31, 2014 order disposed of all of the claims that were brought before it for adjudication, that order is final for purposes of this statute. *Matthew v. Herman*, 56 V.I. 674, 677 (V.I. 2012). Issues of statutory construction are afforded plenary review. *V.I. Conservation Soc'y, Inc. v. Golden Resorts, LLLP*, 55 V.I. 613, 619 (V.I. 2011) (citing *V.I. Pub. Serv. Comm'n v. V.I. Water & Power Auth.*, 49 V.I. 478, 483 (V.I. 2008)).

### B. Precedential Value of Appellate Division's *Khalil* Decision

Hoda argues that the Superior Court erred by treating the *Khalil* decision as binding precedent, given its status as an unpublished opinion of the Appellate Division. Specifically, Hoda invokes the general rule that "unpublished decisions or opinions have no precedential value other than the persuasiveness of their reasoning," Jason B. Binimow, Annotation, *Precedential Effect of Unpublished Opinions*, 105 A.L.R.5th 499 (2003), and further notes that the Internal Operating Procedures of the Appellate Division itself provide that the Appellate Division "does not regard unpublished opinions as precedents that bind the court." D.V.I. APP. DIV. I.O.P. 5.7.

■ Despite devoting nearly four pages of her brief to the issue of whether *Khalil* and other unpublished decisions of the Appellate Division are binding on the Superior Court, Hoda ultimately acknowledges — and Hisham, in his brief, agrees — that it is not necessary for this Court to resolve this issue as part of this appeal, since decisions of the Appellate Division are unquestionably not binding on this Court. *In re People of the V.I.*, 51 V.I. 374, 389 n.9 (V.I. 2009). Nevertheless, since the parties have fully briefed the issue, and it is one that will likely recur in future cases, we will revisit it in order to provide guidance to the Superior Court.

See *Frett v. People*, 58 V.I. 492, 512 (V.I. 2013); *Fontaine v. People*, 56 V.I. 571, 593 (V.I. 2012); *Smith v. Turnbull*, 54 V.I. 369, 374 (V.I. 2010).

Before this Court became operational on January 29, 2007, the Appellate Division of the District Court had appellate jurisdiction over the Superior Court of the Virgin Islands, and was in turn subject to the appellate jurisdiction of the United States Court of Appeals for the Third Circuit. *Hypolite v. People*, 51 V.I. 97, 101 (V.I. 2009); 48 U.S.C. § 1613a(a). This Court, in one of its earliest decisions, directed the Superior Court to treat decisions of the Appellate Division — and those of the Third Circuit while sitting as the *de facto* court of last resort for the Territory — issued before this Court became operational in 2007 as binding precedent in order to ensure stability in the law and reduce any uncertainty caused by this Court's creation. *In re People*, 51 V.I. at 389 n.9. In other words, this Court announced this rule to ensure that litigants could nevertheless rely on prior federal precedent while this Court began to develop indigenous jurisprudence for the Virgin Islands. *Pichardo v. V.I. Comm'r of Labor*, 613 F.3d 87, 95, 53 V.I. 936 (3d Cir. 2010) (quoting *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 362 n.3, 49 V.I. 1133 (3d Cir. 2007)).

■ Much has changed in the six years since this Court first instructed the Superior Court to treat these pre-2007 federal decisions as binding precedent. While virtually every issue of Virgin Islands law once represented an issue of first impression for this Court, we have now issued approximately 450 opinions, thus significantly reducing uncertainty. Moreover, this Court has established a three-part analysis for the Superior Court to apply to resolve issues of first impression in Virgin Islands common law. *Gov't of the V.I. v. Connor*, 60 V.I. 597, 603 (V.I. 2014) (citing *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 981 (V.I. 2011)). In fact, this Court has already held, notwithstanding the *In re People* footnote, that decisions of the Appellate Division and the Third Circuit addressing issues of Virgin Islands common law are no longer binding on the Superior Court, and instead the Superior Court must apply the three-factor *Banks* analysis to resolve common-law issues that this Court has not yet addressed. *Connor*, 60 V.I. at 605 n.1. And, of course, Congress has repealed the Third Circuit's temporary certiorari jurisdiction over this Court, instead vesting the Supreme Court of the United States with certiorari jurisdiction only over this Court's decisions involving federal law, effective with cases commenced on or after December 28, 2012. 28 U.S.C. § 1260; Pub. L. No. 112-226, § 3, 126 Stat. 1606 (2012).

■ The nature of the relationship between this Court and the Appellate Division has also changed in the intervening six years since *In re People* was decided. Although this Court described the Appellate Division as its predecessor court in its earliest opinions, this description was incorrect, *see Hodge v. Bluebeard's Castle, Inc.*, 62 V.I. 671, 687 (V.I. 2015), and the Third Circuit has recently held that even when deciding the final pre-2007 cases that remain pending in the Appellate Division, the District Court must predict how this Court would resolve questions of Virgin Islands law, just as it would when hearing a trial case involving an issue of local law through its diversity or supplemental jurisdiction. *See Frank v. Enrietto*, 597 Fed. Appx. 696, 699 (3d Cir. 2015); *Gov't of the V.I. v. Lewis*, 620 F.3d 359, 364 n.5, 54 V.I. 882 (3d Cir. 2010); *accord Hodge v. Bluebeard's Castle, Inc.*, 392 Fed. Appx. 965, 975 (3d Cir. 2010) (holding that this Court may reverse a decision of the Appellate Division even in the same case involving the same parties). Notably, this Court has already indicated that decisions issued by the Appellate Division after 2007, like decisions of the District Court or Third Circuit heard through diversity or supplemental jurisdiction, are not binding on the Superior Court, since the role of the federal courts in those cases is not to independently determine Virgin Islands law, but to predict how this Court would determine Virgin Islands law. *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 755-56 (V.I. 2014); *Walters v. Walters*, 60 V.I. 768, 777 n.10 (V.I. 2014); *see also People v. Simmonds*, 56 V.I. 84, 90 (V.I. Super. Ct. 2012) ("*In re People* suggests that decisions of the Appellate Division and Third Circuit issued after January of 2007 are not binding on [the Superior Court]."); *Edwards*, 497 F.3d at 359-61 (explaining that the District Court lacks the ability to independently determine issues of Virgin Islands law).

■ These significant developments in Virgin Islands law over the past six years may require this Court to one day reexamine the binding effect of pre-2007 Appellate Division decisions on the Superior Court. We need not do so in this case, however. Unlike this Court, which permits its unpublished opinions to be cited and relied upon, *see* V.I.S.Ct.I.O.P. 5.3; V.I.S.Ct.I.O.P. 5.7.1(a), the Appellate Division has expressly instructed that its unpublished opinions should not be regarded as precedent. D.V.I. App. Div. I.O.P. 5.7. This Court, through the pertinent part of its *In re People* decision, clearly sought to preserve the status quo with respect to what authorities the Superior Court should consider binding. The Superior

Court's reliance on *In re People* as a basis to uncritically rely on the Appellate Division's *Khalil* decision as binding precedent despite its unpublished status is inconsistent with that purpose, in that it enlarges the scope of binding precedent rather than simply maintaining the status quo. If the Appellate Division itself has decided that *Khalil* and its other unpublished opinions possess no precedential value, we see no reason to second-guess that court's decision and compel the Superior Court to nevertheless treat those decisions as binding precedent. Rather, such decisions should be treated only as persuasive authority, and should be followed based only on the quality of their reasoning. *Banks*, 55 V.I. at 983-84.

## C. Validity of the Hameds' Marriage

■ ■ We now turn to the merits to determine whether Hoda and Hisham were, in fact, married under Virgin Islands law on May 7, 1999. Virgin Islands law expressly provides that

*No marriage shall be valid unless solemnized by*

(1) a clergyman or minister of any religion whether he resides in the Virgin Islands or elsewhere in the United States; or

(2) witnessed by a Local Spiritual Assembly of the Bahai is [sic] according to the usage of their religious community; or

(3) any judge or [sic] any court of record.

16 V.I.C. § 32 (emphasis added). While section 32 unquestionably establishes that a marriage that is not solemnized by one of these methods shall not be valid, this same language is not used with respect to the requirement that the parties to a marriage obtain a license. *See In re Reynolds*, 60 V.I. 330, 334 (V.I. 2013) (in interpreting a statute, we look first to its plain language). Instead, the Virgin Islands Code authorizes imposition of a fine upon an individual who "solemnizes a marriage without first having had delivered to him a license . . . issued by the clerk of the Superior Court and authorizing the marriage." 16 V.I.C. § 34. The Virgin Islands Code provides for the clerk of the Superior Court to obtain certain information, under oath, from the applicants for a marriage license, including their names and ages, prior marital status, and whether they are related to each other, *see* 16 V.I.C. § 35, and prohibits "the court" from issuing a marriage license to someone under 18 years of age in the absence of parental consent. 16 V.I.C. § 36. Other sections

provide for public examination of marriage license applications, *see* 16 V.I.C. § 37, mandate that the clerk issue a marriage license if the parties are legally competent to marry, *see* 16 V.I.C. § 38, and require that the Superior Court maintain records of all marriage licenses, with "[a] copy of any license and certificate of marriage so kept and recorded, [which] shall be competent evidence of the marriage." 16 V.I.C. § 41(a), (c).

Conspicuously absent from the Virgin Islands Code is any provision that expressly provides that a marriage entered into without a license — as opposed to one entered into without solemnization — is not valid. Significantly, the *Khalil* decision, which the Superior Court followed as binding precedent in this case, itself acknowledged this striking omission, and even noted "the Legislature addresses licensure only in terms of the application and issuance procedures and the clergy's duty to ensure a license was obtained prior to performing the ceremony," and that "no similar fine or other consequence is imposed on the persons marrying without benefit of a license." 2003 U.S. Dist. LEXIS 6229, at *8. The *Khalil* court further observed that Virgin Islands statutory law "is very specific about the types of conduct or omissions that would render a marriage void *ab initio* or voidable upon challenge by either party," and noted that entering into a marriage without a license was not among the marriages the Legislature identified as void or voidable.[4] *Id.* (citing

---

[4] Under Virgin Islands law,

> A marriage is prohibited and void from the beginning, without being so decreed and its nullity may be shown in any collateral proceeding, when it is between
>
> > (1) a man and his grandmother, grandfather's wife, wife's grandmother, father's sister, mother's sister, mother, stepmother, wife's mother, daughter, wife's daughter, son's wife, sister, son's daughter, daughter's daughter, son's son's wife, daughter's son's wife, wife's son's daughter, wife's daughter's daughter, brother's daughter or sister's daughter;
> >
> > (2) a woman and her grandfather, grandmother's husband, husband's grandfather, father's brother, mother's brother, father, stepfather, husband's father, son, husband's son, daughter's husband, brother, son's son, daughter's son, son's daughter's husband, daughter's daughter's husband, husband's son's son, husband's daughter's son, brother's son or sister's son; or
> >
> > (3) any persons either of whom has been previously married and whose previous marriage has not been terminated by death or a decree of divorce.

16 V.I.C. § 1(a). Likewise,

> A marriage is illegal and shall be void from the time its nullity is declared by decree, if either party thereto

16 V.I.C. §§ 1-2). In fact, the *Khalil* court even acknowledged that the vast majority of other jurisdictions have adopted a rule that marriages should be upheld as valid despite the failure to adhere to statutory procedures unless there is "a clear legislative intent" to invalidate the relationship. *Id.* at *9 (collecting cases).

Nevertheless, despite the structure of the Virgin Islands marriage statutes and the overwhelming authority from other jurisdictions, the *Khalil* court concluded that the absence of a marriage license renders the purported marriage void under Virgin Islands law. Specifically, the *Khalil* court concluded that section 35 imposes a mandatory duty for the Clerk of the Superior Court to examine the applicants before a marriage license may issue, and that sections 37 and 38 establish the licensure procedure as a critical factor in determining whether an individual is legally competent to marry. According to the *Khalil* court, "[t]o rule that a license is a dispensable requirement for a lawful marriage would have the absurd effect · of rendering the applicable statute entirely meaningless and effectively permitting common-law marriages to be entered into and subsequently legitimized by the courts." *Id.* at *17.

 We agree that the Legislature has established procurement of a marriage license as a mandatory requirement for entering into a marriage in the Virgin Islands. However, as subsequent decisions of this Court make clear, the fact that a statute uses mandatory requirements is not — in and of itself — dispositive, for even requirements couched in mandatory language may be equitably waived or judicially modified. *See, e.g., Allen v. HOVENSA, LLC*, 59 V.I. 430, 436 (V.I. 2013); *Brooks v. Gov't of the V.I.*, 58 V.I. 417, 425 (V.I. 2013); *First Am. Dev. Group/Carib, LLC v. WestLB AG*, 55 V.I. 594, 611 (V.I. 2011); *In re Guardianship of Smith*, 54 V.I. 517, 524 n.5 (V.I. 2010). For example, it is well established that statutes of limitations — despite containing mandatory language about when a claim may be commenced — will not defeat untimely claims if a statute-of-limitations defense is not invoked in a timely manner. *Allen*, 59 V.I. at 436 (collecting cases). In other words, the *Khalil*

---

(1) is an idiot or a person adjudged a lunatic;
(2) has consented thereto by reason of fraud or force;
(3) is incapable, from physical causes, of entering into the marriage itself; or
(4) is under the age of consent . . . .

16 V.I.C. § 2.

court, by focusing on whether the licensure requirement is mandatory, answered the wrong question; rather than ascertaining whether the Legislature intended for mandatory licensure, the proper question is whether the Legislature intended for a violation of the mandatory licensure requirement to, *in every instance*, result in the marriage being declared void.

■ Here, there is simply no evidence that the Legislature intended, in all cases, for the absence of a marriage license to render a marriage invalid. As section 32 illustrates, had the Legislature intended the lack of a license to render a marriage invalid, it could easily have stated that "no marriage shall be valid" unless a license was first obtained. Alternatively, the Legislature could have included the failure to obtain a license as a ground to render a marriage void or voidable. It also could have established a penalty on the husband and wife, rather than only on the clergyman or judge. The fact that it did not do so is telling.[5] The Connecticut Supreme Court, in interpreting a statute containing a similar requirement that a license be obtained prior to solemnization but only imposing a penalty on the individual who solemnizes a marriage without a license, held that "the absence of express language in the governing statute declaring a marriage void for failure to observe a statutory requirement . . . . means that such a marriage is not invalid." *Carabetta v. Carabetta*, 182 Conn. 344, 438 A.2d 109, 112 (1980).[6] Likewise, the

---

[5] In his brief, Hisham cites to cases from other jurisdictions, such as *Nelson v. Marshall*, 869 S.W.2d 132 (Mo. Ct. App. 1993), and *Lopez v. Lopez*, 102 N.J. Super. 253, 245 A.2d 771 (1968), for the proposition that marriages entered without a license are invalid. However, as those cases clearly explain, there are statutes in those jurisdictions that specifically state that marriages entered into without a license are void. *Nelson*, 869 S.W.2d at 134 (quoting the state statutory provision that no marriage "shall be recognized as valid unless the license has been previously obtained"); *Lopez*, 245 A.2d at 772 (similar). Thus, these cases are of no relevance to the issues on appeal; rather, the only out-of-Territory cases that are persuasive are those in which — like the Virgin Islands — a statute requires that the parties receive a marriage license, but the lack of a license is not listed as a ground upon which to void a marriage.

[6] Hisham relies on *State v. Nosik*, 44 Conn. App. 294, 689 A.2d 489 (1997), for the proposition that the rule announced in *Carabetta* had somehow been narrowed, since the Connecticut Appellate Court determined that a marriage that had been solemnized without a license in New Jersey was not valid. *See id.* at 299. However, it is not clear to us how an intermediate Connecticut appellate court's decision — which applied the marriage laws of New Jersey, and not Connecticut, since the case involved a purported marriage ceremony that occurred in New Jersey — has any relevance whatsoever to the continued validity of the

California Supreme Court has also held that, to determine whether a marriage should be recognized as valid despite the failure to comply with statutory formalities, a court must consider the totality of the circumstances and the subjective state of mind of the parties, and allow the parties to an otherwise-invalid marriage to enjoy the civil benefits of marriage if they possessed a good faith belief that their marriage was valid. *Ceja v. Rudolph & Sletten, Inc.*, 56 Cal. 4th 1113, 158 Cal. Rptr. 3d 21, 302 P.3d 211, 215-16 (2013).[7]

■ Perhaps most significantly, section 41, which governs maintenance of records by the Superior Court, only provides that a marriage license "shall be competent evidence of the marriage." 16 V.I.C. § 41(c). The phrase "competent evidence" is a term of art that simply means admissible evidence. *Molloy v. Indep. Blue Cross*, 56 V.I. 155, 173 (V.I. 2012) (referring to "competent evidence" as that "which would be admissible at trial"); *see also PacifiCorp v. Idaho State Tax Comm'n*, 153 Idaho 759, 291 P.3d 442, 451 (2012) (citing BLACK'S LAW DICTIONARY 639 (9th ed. 2009)). The Legislature, had it intended for a marriage license to be required in every single instance, would not have used the term "competent evidence"; instead, it would have used the phrase "only evidence" or "conclusive evidence." *Accord Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596, 625 (V.I. 2012) (holding that statute's use of phrase "prima facie evidence" rather than "conclusive evidence" established that

<hr>

Connecticut Supreme Court's *Carabetta* decision. Significantly, Hisham fails to note in his brief that the Connecticut Supreme Court subsequently reviewed the Connecticut Appellate Court's *Nosik* decision on appeal, and in its opinion again emphasized that it was applying New Jersey law rather than the law of Connecticut. *State v. Nosik*, 245 Conn. 196, 715 A.2d 673, 677-78 (1998) (discussing New Jersey Statutes §§ 37:1-2 and 37:1-10). Thus, the Connecticut Appellate Court's decision does not stand for the broad, unqualified proposition that Hisham asserts in his brief.

Likewise, Hisham's reliance on *State v. Lard*, 1974-NMCA-004, 86 N.M. 71, 519 P.2d 307 (1974), is also misplaced, for in that criminal case, the court simply declined to apply New Mexico's spousal privilege to a man and a woman living together. The opinion mentions that under then-applicable state statutes a license was required for the existence of a marriage. *Id.* at 310.

[7] In his appellate brief, Hisham cites to *Estate of DePasse*, 97 Cal. App. 4th 92, 118 Cal. Rptr. 2d 143, 152 (2002), for the proposition that California has "examined the issue and concluded that a license is a mandatory requirement for a valid marriage." However, as noted above, the California Supreme Court, in the *Ceja* case, expressly overruled the intermediate appellate court's *Estate of DePasse* decision, *see Ceja*, 302 P.3d at 219, yet Hisham's counsel did not bring the *Ceja* case to this Court's attention despite her obligation to do so. V.I.S.CT.R. 15(b).

the issuance of a Certificate of Government Insurance Coverage was not dispositive as to the question of whether an employer is, or is not, insured under Workers Compensation Act).

 Thus, it is clear that the Legislature, by describing a marriage license only as "competent evidence," envisioned that individuals may be able to prove that they are married by relying on evidence other than a marriage license. Although Hoda and Hisham failed to obtain a marriage license prior to solemnization, the record is replete with largely uncontradicted evidence that they intended to enter into a valid marriage on May 7, 1999. Hoda and Hisham participated in a religious ceremony, in front of their family, that was labeled a marriage ceremony, solemnized by a recognized member of the clergy, and resulted in issuance of a "Marriage Certificate" by the Virgin Islands International Islamic Society. They were both of mature age — unlike the wife in *Khalil* — and cohabitated for more than a decade after the ceremony, and had four children together. Accordingly, the fact that they failed to obtain a license prior to solemnization of their marriage — without more — did not render their marriage invalid. When a question arose as to whether their relationship qualified as a legal marriage, they sought to rectify the perceived problem by applying for a marriage license from the Superior Court. Significantly, there is no evidence that Hisham took any action inconsistent with believing that he was legally married to Hoda until Hoda filed her divorce petition, at which point Hisham argued for the first time that they were never legally married. *See Yun v. Yun*, 908 S.W.2d 787, 790 (Mo. Ct. App. 1995) (refusing to allow husband, who had always held himself out as married and had chosen to bring children into the marriage, to challenge the legality of the marriage for the first time after his wife sought a divorce). Thus, the Superior Court could adjudicate Hoda's divorce petition, notwithstanding the fact that she and Hisham failed to obtain a marriage license prior to having their marriage solemnized.

## III. CONCLUSION

 We conclude that, the Superior Court is not required to treat unpublished decisions of the Appellate Division as binding authority, when the Appellate Division has itself decreed that they should not be regarded as having precedential value. We also conclude that Hoda and Hisham entered into a valid marriage, given the absence of any provisions in the Virgin Islands Code that characterize a marriage as being void or

voidable if a license is not first obtained, and the overwhelming, largely uncontradicted evidence that they intended to get married when their marriage was solemnized on May 7, 1999. Accordingly, we reverse the Superior Court's January 31, 2014 order and remand the case for further proceedings on the merits.